JOSEPH NEIER ET UX., Respondents, *v.* MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

March 28, 1882.

1. Negligence of the plaintiff which contributes remotely to the injury will not prevent a recovery, if the defendant could, by the exercise of ordinary care and prudence, have avoided the danger.

2. If the plaintiff had timely notice of the danger, and by the exercise of ordinary care and prudence, could have avoided the injury, there can be no recovery, though the speed of the defendant's train exceeded the limit fixed by ordinance.

3. In the use of a public highway all persons are required to exercise reasonable care and prudence to avoid a collision, regard being had to the different modes of travel adopted.

4. It is improper to submit to the jury the question of the reasonableness of a city ordinance limiting the rate of speed over a railroad track laid along the streets of the city.

5. An ordinance of the city of St. Louis limiting the rate of speed of locomotives over its streets to six miles an hour, is not void as being in conflict with the franchise of the Missouri Pacific Railway Company.

6. The franchise to lay tracks along Poplar Street in the city of St. Louis, does not authorize the running of locomotives thereon at the rate of fifteen miles an hour, in violation of a city ordinance.

7. That a railroad company is authorized by the legislature to lay its tracks along the streets of a city, does not prevent such city from regulating and limiting the rate of speed of the locomotives run thereon.

8. That, under a franchise, the railroad company has laid its track with so short a curve and at such a grade that it cannot conveniently move trains at a speed fixed by ordinance, is no defence to an action for damages to an individual, occasioned by a greater rate of speed.

9. A municipal ordinance, passed in pursuance of a grant of authority, will not be declared void for unreasonableness unless it is clearly void.

APPEAL from the St. Louis Circuit Court, HORNER, J.
*Affirmed.*

E. A. ANDREWS and H. S. PRIEST, for the appellant: The second count of the petition is fatally defective, because, within itself it does not state any cause of action. — Bliss on Code Pl., sect. 121; *Clark* v. *Iron Co.*, 9 Mo. App. 446. The court, under the evidence, should have instructed the jury to return a verdict for the defendant, as requested by the defendant. — *O'Donnell* v. *Railroad Co.*, 7 Mo. App. 190; *Artz* v. *Railroad Co.*, 34 Iowa, 153; *Henze* v. *Railroad Co.*, 71 Mo. 638; *Harlan* v. *Railroad Co.*, 64 Mo. 480; *Moody* v. *Railroad Co.*, 68 Mo. 472; *Purl* v. *Railroad Co.*, 72 Mo. 168; *Bell* v. *Railroad Co.*, 72 Mo. 50; Thomp. on Neg. 1174, sect. 21. The court erred in giving plaintiff's instructions. They were not based upon the cause of action, the specific allegation of negligence contained in plaintiff's petition, but permitted the jury to search amongst all the circumstances and surroundings of the event, and return a verdict upon any negligence of any servant of defendant connected therewith. — *Edens* v. *Railroad Co.*, 72 Mo. 212; *Waldhire* v. *Railroad Co.*, 71 Mo. 514;

*Price* v. *Railroad Co.*, 72 Mo. 414 ; *Buffington* v. *Railroad Co.*, 64 Mo. 246 ; *Leduke* v. *Railroad Co.*, 4 Mo. App. 485. The ordinance of the city of St. Louis, No. 10,305, is unreasonable, and destructive of the defendant's right of the use of its road at the place where the accident happened, and therefore violative of its charter, and not applicable to defendant upon that part of defendant's road. — *Yates* v. *Milwaukee*, 10 Wall. 497 ; *Austin* v. *Murray*, 16 Pick. 126 ; *Atlantic, etc., R. Co.* v. *St. Louis*, 66 Mo. 228 ; *Daniels* v. *Railroad Co.*, 62 Mo. 43 ; Dill. on Mun. Corp., sect. 326 ; Sess. Acts 1849, pp. 219–222 ; Sess. Acts 1851, pp. 268–273.

Louis Gottschalk, for the respondent : The transcript, failing to show that the motion for a new trial was filed in the same term that verdict was rendered, this appeal must be dismissed. — *Walsh* v. *St. Louis*, 12 Cent. L. J. (App.) 74 ; *The State to use* v. *Bank*, 6 Mo. App. 582 ; *Moran* v. *January*, 52 Mo. 523. The instructions of plaintiff were right, and defendant's instruction about the reasonableness of the ordinance was properly refused, as that question was not one that could be submitted to a jury. The ordinance being pleaded, was properly read in evidence, and this was the only objection to any evidence offered. — *Zimmerman* v. *Railroad Co.*, 71 Mo. 484 ; Cooley's Const. Lim. (3rd ed.) 200, 576 ; *St. Louis* v. *Weber*, 44 Mo. 547 ; *Atlantic, etc., R. Co.* v. *St. Louis*, 66 Mo. 228 ; Sess. Acts 1863–4, p. 478.

Bakewell, J., delivered the opinion of the court.

This was an action by husband and wife for injuries to the wife by being thrown out of a milk-wagon, in consequence of a collision with one of the locomotives of defendant on defendant's track in St. Louis. There was a verdict and judgment for plaintiffs.

There was evidence tending to show that Neier was a dairyman, and that his wife was delivering milk to cus-

tomers on the morning of the accident. In making her rounds, she entered Poplar Street from Third Street about six o'clock on a morning in August. She asked about the train, and was told by the flagman that it would be round the curve almost immediately. She then drove her wagon on to a vacant lot and entered the house of an acquaintance, where she remained about a quarter of an hour. She then drove down Poplar Street and was delivering milk at a house between Main and Second Streets, when the train of the Iron Mountain Railroad, drawn by the locomotive of defendant, came round the curve from the levee, at the rate of about fifteen miles an hour. She dropped her milk, took up the lines, and attempted to drive across the track, so as to get into the alley on the other side of the street, which does not run through the block. She would possibly have accomplished her purpose, but that the horse was checked by the good-natured efforts of a passer-by, who caught the head-stall to hurry the horse over. As it was, the locomotive caught one of the hind wheels and Mrs. Neier was thrown out and permanently injured, and the wagon was wrecked.

Poplar Street at the point of collision is twenty-one feet and one inch from curb to curb. The track of defendant's road leaves eight feet between the rail and the curb on either side. The passenger cars in the train projected eighteen inches on each side over the track, which is five feet one inch between the rails. The track makes a very sharp curve from the levee to Poplar Street. The accident took place about three hundred and eighty feet from the levee, on a heavy up-grade.

Evidence was introduced tending to show that Mrs. Neier might possibly have escaped if, in her strait, she had calmly done the very wisest thing possible under the circumstances. There was also evidence tending to show that she did the best that she could do, and the best that could be done, to escape. There was evidence tending to show

that the flagmen were all at their post, and did all that lay in them to signal and stop the train. Nor do we think that it can be fairly inferred from the evidence, that the engineer was guilty of any other negligent or wrongful act than that of coming round the curve at the rate of fifteen miles an hour. The testimony is, that he saw the wagon as soon as the locomotive came round the curve; that he put on the air-brake, gave a backward movement to the driving-wheel, and dropped sand on the track at once. But the track was very muddy, and it was not possible to stop the train before it reached the wagon. There is also evidence tending to show that a train of five cars, as this train was, could not, on a muddy day, be brought round the curve and up the Poplar Street grade at a rate of six miles an hour, and that the engineer came round at no higher speed than any experienced engineer would adopt to avoid probable danger of stalling the train on the Poplar Street ascent.

Plaintiffs introduced in evidence an ordinance of the city of St. Louis, No. 10,305, approved January 22, 1877, which provides that it shall be unlawful, within the limits of the city of St. Louis, for any car or locomotive propelled by steam, to run at a rate of speed greater than six miles per hour, except on tracks upon the levee from Arsenal Street to Elwood Street. The violation of the provision is made a misdemeanor subjecting the offender to fine not to exceed $500. Appellant objected to the ordinance as incompetent and irrelevant.

An instruction in the nature of a demurrer to the evidence was refused.

The court gave the case to the jury upon the following instructions, of which the last two were given at defendant's instance. There was also an instruction as to the measure of damages, not set out in the bill of exceptions:

" 1. If the jury find from the evidence that plaintiff Cath-

erine, at the time mentioned in the petition, was the wife of her co-plaintiff Joseph Neier, and that defendant, at the time and place mentioned, by its agents or employees, ran its locomotive against plaintiffs' wagon, and caused the injuries complained of, and that said collision was so caused through the negligence or carelessness of defendant or its agents in the management of its locomotive, and without any want of ordinary care on the part of said Catherine, directly contributing to the happening of said collision, then they will find for the plaintiffs.

" 2. Although the jury may believe from the evidence that plaintiff Catherine was guilty of some negligence or imprudence which contributed remotely to the happening of said accident, yet, if they further find from the evidence, that the defendant, by the exercise of ordinary care and prudence, after having discovered the danger in which plaintiff was, could have avoided the calamity, then the jury will find for the plaintiffs.

" 3. The court instructs the jury, that if they find from the evidence that plaintiff Catherine was in the habit of going in and along Poplar Street, between Second and Main Streets, in the city of St. Louis, about the time she so entered and passed along said street on the morning in question ; that on or about the time she so entered, it was customary for a train or trains of defendant to pass over and along said street ; that on the morning of the accident a watchman or flagman was stationed by the defendant at the intersection of Second and Poplar Streets aforesaid, for the purpose of warning persons on foot and in vehicles of the approach of defendant's said train or trains, and that said watchman or flagman did so warn and notify plaintiff Catherine of the approach of a train ; or if you further find that plaintiff Catherine had any other timely notice thereof, and that by the exercise of reasonable care and prudence on her part, she could have avoided the injuries she received,

you will find for the defendant, although you may believe that the speed of defendant's train exceeded the limit provided by the ordinance read in evidence.

"4. The court instructs the jury, that in the use of a public highway such as said Poplar Street, all persons are required to exercise reasonable care and prudence to avoid a collision, according to the different modes of travel adopted by each, and in considering this case you are at liberty to take into consideration all the facts and circumstances which affect the modes of travel adopted, and measure the care and caution required of both the plaintiff Catherine and the defendant by such facts and circumstances."

The following instruction was asked by defendant and refused by the court : —

"Although the jury may believe that the city of St. Louis has the power to regulate the speed of defendant's trains in running to and over said Poplar Street, still, such regulations must be reasonable according to the necessities of the track thereon and the defendant's business ; and if you find that the ordinance read in evidence is unreasonable in limiting the rate of speed to six miles an hour over said street, or the parts thereof in question, such ordinance is invalid, and does not affect this case, provided that you further find that defendant's train, on the morning in question, was running at a reasonable rate of speed, when all the facts and circumstances are taken into consideration."

There was evidence to support the instructions given and the verdict. We think the case was fairly put to the jury. There was the evidence of defendant's witnesses, uncontradicted, that the curve from the levee to Poplar Street was an unusually abrupt curve. There was nothing to show why defendant was compelled to lay down or maintain so abrupt a curve that it could turn only by tearing along the street at the rate of fifteen miles an hour. The instruction submitting to the jury the reasonableness of the munic-

ipal ordinance admitted was properly refused, for obvious reasons.

It is contended that the trial court improperly admitted this ordinance, the terms of which defendant complains are in conflict with the charter rights of defendant, unreasonable, and, as to defendant, void. This is really the point upon which this case turns, and the only question raised upon the record which need be discussed.

This case was argued and submitted in this court with the case of Joseph Neier against the same defendant, in which the action was for the loss of the services of the wife in consequence of the same occurrence in evidence in this case. *Post*, p. 35. Appellants' counsel has filed in this case no other brief than that filed in the case of which Joseph Neier alone is plaintiff. The testimony in both cases, except for an omission of which we will speak, was substantially the same.

In this case the charter and amended charter of the Missouri Pacific Railway do not appear to have been offered in evidence ; in the other case they were put in, together with the deeds under which it is claimed that defendant acquired the rights which the Missouri Pacific Railroad had in this track. For the purposes of this opinion there can be no objection to treating this case as if that testimony was in the case. Both cases were argued and submitted together.

It is proper to add here to the statement of the evidence, that defendant introduced testimony tending to show that, owing to the increase of business from the elevators, it would be impossible to communicate with the Union Depot from the levee without keeping up a constant succession of trains and occupying the Poplar Street track day and night, if the locomotives of defendant were limited to a speed of six miles an hour along that track.

In the case of *Atlantic and Pacific Railroad Company* v. *St. Louis* (3 Mo. App. 315), which was a proceeding to enjoin the city of St. Louis from tearing up this Poplar Street track, this court held that the charter of

the Pacific Railroad Company required that company to complete its road within seventeen years; that having chosen the point in St. Louis at which it would begin its road, and built its road westward from that point, and maintained that location for twenty years, the road could not then extend its road east over the streets of St. Louis without any legislative authority for so doing; that having failed to build its branch roads within the time prescribed, it could not build a branch road under its charter down Poplar Street to continue from the terminus of the road eastward to the river under the power to build switches or spur tracks. We also held that, whilst the legislature might authorize the building of a railroad over and along the streets of a city, the city whose streets are thus taken may, to a reasonable extent, regulate and control the operation of such road within its limits. Since the constitution of 1865, the legislature of Missouri confessedly has no power to grant a right to operate or construct a railroad within any city without consent of the municipal authorities. We dissolved the injunction which had been granted by the circuit court. On appeal to the supreme court our judgment was reversed. But whilst the supreme court held that the city could not tear up the Poplar Street track, there seems to be nothing in that opinion expressing disapprobation with the views which we had expressed as to the right of the city to regulate the use of that track by the railroad corporation. The supreme court says that "the city ordinance conferred no right and could impose no obligation upon the company inconsistent with, or impairing the franchise granted by the state" (p. 257), which is held to have been a franchise to build its track along Poplar Street to the levee; but it also says (p. 259), "that the track was badly constructed and kept, and that trains passed over it at all hours, and at a dangerous rate of speed, were matters which might have been regulated by reasonable ordinances of the city, but did not authorize the city to tear up the track, or

to prevent the company from relaying it." *Atlantic, etc.,
R. Co.* v. *St. Louis*, 66 Mo. 228. And whilst streets, in
incorporated cities, and other public highways are subject to
the paramount authority of the legislature in the regulation
of their use, it results from the power over streets univer-
sally granted to cities, and granted to St. Louis in its
charter (Art. III., sect. 26, sub. 1, 2), that to protect the
safety of the citizens, municipal corporations, in the absence
of legislative restrictions, may control the mode of propelling
cars within their limits, may entirely prohibit the use of
steam tractors, and may regulate the rates of speed.   3 Mo.
App. 321 ; Dill. on Mun. Corp., sect. 565.

The testimony is that Poplar Street, from the levee to
Third Street, passes through a very densely populated part
of the city of St. Louis ; the street is narrow, and intersected
by much-travelled streets.   We do not see how it can be
said that a case has been made out against the ordinance in
question showing it to be so clearly unreasonable that the
circuit court was bound, as a matter of law, to declare it void.
*St. Louis* v. *Weber*, 44 Mo. 547.   The city of St. Louis
has always had the right to regulate the use of its streets.
This right is conferred upon the city in express terms in
every charter from a period before the act of 1849, author-
izing the Pacific Railroad (under whom defendant claims)
to construct a railroad from the city of St. Louis.   And the
act of assembly, approved February 15, 1864, entitled
" An act for the convenient delivery of railroad freight
in the city of St. Louis," expressly provides, that " the city
council shall have the power to prescribe the time, manner,
and rate of speed that may be adopted for the cars running
over railroad tracks connecting the Missouri, Iron Mountain,
and Pacific Railroads, with the St. Louis Grain Elevator on
the levee."

We are of opinion that if defendant runs its locomo-
tives through and across the travelled streets of the city of
St. Louis at the rate of fifteen miles an hour, it does so at

its own risk; and that if any injury to person or property arises as the direct consequence of such an unlawful rate of speed, the party injured, if otherwise entitled to recover, has a good cause of action against the railroad company.

The judgment is affirmed. Judge LEWIS is absent; Judge THOMPSON concurs.