JOHN C. ECKERT ET AL., Respondents, v. ST. LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

February 27, 1883.

1. EVIDENCE OF EXPERTS. — A person practised in building locomotives and in running them on trial trips is competent as an expert to testify as to the distance within which a train of cars may be stopped by a steam brake.

2. EVIDENCE — NEGLIGENCE. — In an action for personal injuries to one who was on the defendant's railway track, it is competent to show that persons habitually walked on the track at the place where the accident happened.

3. DAMAGES — CONTRIBUTORY NEGLIGENCE. — Contributory negligence of the plaintiff will not prevent a recovery if the defendant could, by the exercise of reasonable care, have discovered the danger and averted the accident.

APPEAL from the St. Louis Circuit Court, HORNER, J *Affirmed.*

BENNETT PIKE, for the appellant: It was the plaintiff's duty, when he walked upon said track, to look constantly both before and behind him, in order to see that the track was clear. — *Fletcher* v. *Railroad Co.*, 64 Mo. 484; *Morris & Essex R. Co.* v. *Haslon*, 4 Vroom, 149; *Runyan* v. *Central R. Co.*, 1 Dutch. 357; *Chicago, etc., R. Co.* v. *Still*, 19 Ill. 508; *North Penn. R. Co.* v. *Heilman*, 49 Penn. 62; *Bellefontaine R. Co.* v. *Hunter, Admr.*, 33 Ind. 336; *Drain* v. *Railway Co.*, 10 Mo. App. 531. If the deceased without signals might with care have seen the back-

ing train, or known it was approaching, plaintiffs cannot recover. — *Galena, etc., R. Co.* v. *Loomis*, 13 Ill. 548; *Chicago, etc., R. Co.* v. *Patchin*, 16 Ill. 198; *Turner* v. *Railroad Co.*, 74 Mo. 607; *Zimmerman* v. *Railroad Co.*, 71 Mo. 476.

LOUIS GOTTSCHALK, for the respondents: If the killing of the deceased might have been avoided by the defendant after it saw, or by the exercise of ordinary care might have seen, him on the track, in time sufficient to prevent the calamity, then defendant is liable. — *Hicks* v. *Railroad Co.*, 64 Mo. 436; *Frick* v. *Railroad Co.*, 5 Mo. App. 435, 440; *Townley* v. *Railroad Co.*, 53 Wis. 626; *Smith* v. *Railroad Co.*, 25 Kan. 744. Greater care is to be exercised by the persons managing a train of cars within the limits of a town or city than is required in the country. — *Brown* v. *Railroad Co.*, 50 Mo. 461; *Maher* v. *Railroad Co.*, 64 Mo. 276; *Hicks* v. *Railroad Co.*, 64 Mo. 439; *Harlan* v. *Railroad Co.*, 65 Mo. 24.

THOMPSON, J., delivered the opinion of the court.

The plaintiffs bring this action to recover damages for the death of their minor son Charles A. Eckert, a lad about sixteen years old, who was run over and killed by the cars of the defendant on the 7th of October, 1881, within the limits of the city of St. Louis. The case was tried by a jury, and the plaintiffs had a judgment for $5,000, the statutory damages.

The plaintiffs offered testimony tending to show that about eight o'clock of the morning of the day in question, the deceased was walking northwardly along one of the tracks of the defendant's railway, between Bryan and Harney Streets, in company with another young man named Bergman; that at the place of the injury there were three parallel railway tracks; that, when first seen, the deceased and Bergman were walking northwardly on the eastern track, the track nearest the Mississippi River, upon which a pas-

senger train coming from the south was rapidly approaching them; that, at the same time, a freight train composed of an engine and five or six freight cars was backing up from the south at the rate of five or six miles an hour, upon the middle track, being the track next west to that on which the boys were walking and the passenger train was approaching; that when the passenger train had approached within a distance of a few yards from the boys, they stepped from the east track over upon the middle track; that they did not look for the freight train, and continued their walk toward the north along the middle track; that no bell was rung upon the engine of the freight train; that no man was standing on the foremost car to give danger signals; that only one man was standing upon the top of the train, and that he stood on the car next the engine; that if the boys had looked along the track to the south, they would have seen the freight train approaching them; and that, while thus walking northwardly upon the middle track, they were struck by the freight train, and both killed.

An ordinance of the city of St. Louis was proved in evidence, regulating the manner of running railway trains within the limits of the city, which provides, among other things, that "when moving, the bell of the engine shall be constantly sounded within said limits; and if any freight car, cars, or locomotives, propelled by steam power, be backing within said limits, a man shall be stationed on the top of the car at the end farthest from the engine, to give danger signals; and no freight train shall at any time be moved within the city limits without it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine."

The plaintiffs also introduced Philip Busse as an expert, who stated, in substance, that he was a machinist; that he had been engaged for many years in building engines; that he had run engines on trial trips two miles or more; that

he had run an engine from Amboy to Dunlieth; that he knew all about engines, because he had helped to construct them; and that a train of five or six cars, running at three, four, five, or six miles an hour on a level grade, could be stopped in thirty feet, if there was a steam-brake. This testimony was objected to, and the court was requested to strike it out, on the ground that the witness had not shown himself to be an expert. In admitting this testimony, and refusing to strike it out, we think the court committed no error. A person long practised in the building of locomotive engines and in running them on trial trips, would clearly be able to give an opinion as an expert on the matter submitted to him.

The court permitted the plaintiffs to show that persons were in the habit of walking on the railroad tracks at and near the place of injury. It is objected that this evidence was incompetent and misleading, and that it had no tendency to show that the deceased was rightfully on the track when struck by the train. We do not see any error in admitting it. There are places in cities where the relation of railway tracks to the public highways and to surrounding buildings is such that people will necessarily and lawfully go upon the tracks in considerable numbers at frequent intervals. In such situations it is manifestly incumbent upon those in charge of railway trains to be more vigilant in the running of their trains, because there is more danger to human life there than at other places. The degree of care which it is the duty of such persons to use is in direct proportion to the danger to others which the running of their train may produce; and hence, the evidence here admitted was competent upon the question whether the servants of the defendant in charge of the freight train were exercising, at that point, that reasonable care which the law required of them.

The testimony offered by the defendant need not be gone into in detail. It is sufficient to say that it tended to prove

that the bell on the locomotive of the freight train was being rung at the time of the accident; that it had been rung continuously for the preceding half mile which the train had traversed; that the requisite number of brakemen were on the train, and that one of these brakemen was standing on the foremost car farthest from the engine, but that no one on this train saw the lads before they were struck, though the fireman of the passenger train saw their danger, and halloed to them, but they paid no attention to him; that the ringing of the bell of the engine of the freight train could be heard for a distance of five or six hundred feet; and that the noise of this train while running at this point, and at the rate of speed at which it was then running, could be heard nearly as far.

We do not think it necessary to set out at length the numerous instructions upon which the court submitted the case to the jury. These instructions presented the case in a view quite as favorable to the defendant as the state of the law will warrant. This will appear especially clear, when it is noticed that the court concluded the instructions given at the request of both parties, by giving the following instruction of its own motion: "If the jury believe from the evidence that the injury to the deceased son of plaintiffs was the direct result of his own want of ordinary care and prudence, such as a person of ordinary care and prudence should have exercised, the jury should find for the defendant, even though the jury may believe that the men employed by defendant in charge of the train, did not use ordinary care and prudence in managing said train."

The objections to the instructions as given and refused resolve themselves into the two following: (1) That the court should, as requested by the defendant, have directed the jury, that upon the pleadings and evidence the plaintiffs could not recover; (2) that the court should have directed the jury, that the plaintiffs could not recover unless they should believe that the persons in charge of the freight

train could have prevented the accident after having become aware of the presence of the deceased on the track in front of the train ; and that the court erred in qualifying the instructions asked by the defendant to this effect, by adding the words, " or might have become aware by using ordinary care."

1. We think the court committed no error in submitting this case to the jury. The deceased was undoubtedly guilty of negligence in stepping upon the middle track without looking to see whether or not any train was approaching on that track. He lost his life in precisely the manner in which, as the books show, many other persons have lost their lives. Stepping from one track to avoid one train, he stepped in front of another without seeing it. He would have seen it but for the fact that he acted as people frequently act in the same situation. He trusted to his ears to warn him of danger, instead of using both his eyes and ears. He trusted to his ears only, and the noise of the passenger train, rushing rapidly by, drowned the lesser noise of the slowly approaching freight train ; and so he was deceived into a sense of security, and lost his life. We see nothing in these circumstances to distinguish this case from several others decided by our supreme court, where it was held that there was a case for a jury. It is not speaking disrespectfully of our supreme court, to say that there is, perhaps, a want of harmony in its decisions upon this question of railway negligence, because the same want of harmony appears in the decisions of the English and American courts generally. There is probably no class of cases in which it is so difficult to apply the law with uniformity and consistency, unless it be in cases of homicide. We shall not undertake the task of examining all the decisions of our supreme court in cases where persons have been killed or injured upon railway tracks. We shall content ourselves with following the last exposition of the law by that court, in a case like the present, of which we have knowledge. We

refer to the case of *Kelley* v. *The Hannibal and St. Joseph Railway Company*, 75 Mo. 138. That case, upon its facts, was very much like the present case. The plaintiff was upon the track of the Kansas Pacific Railroad, within the limits of Kansas City, at a street crossing. He had passed over the defendant's track, when, it seems, to avoid an engine which was approaching on the Kansas Pacific track, he stepped back upon the defendant's track, and was almost immediately struck by an engine coming in the same direction as the engine on the Kansas Pacific track. Before stepping back upon the defendant's track he did not look to see whether an engine was approaching ; and if he had looked, he would have seen the locomotive which struck him. The evidence tended to show that the bell of the engine which struck him was not being rung at the time, nor was the whistle sounded ; that it was approaching at a speed in excess of that allowed by the city ordinance, and that the men in charge of it were not keeping a lookout, as was their duty. This was the plaintiff's case ; and the supreme court held, at the close of it, that the circuit court might well have sustained the defendant's demurrer to the evidence. But the defendant's testimony helped out the plaintiff's case by showing that, notwithstanding the negligence of the plaintiff, the engine could have been stopped before striking him if the engineer and fireman had been at their places, and keeping such a lookout as it was their duty to keep when running through a populous city and approaching a public crossing ; and, in view of this testimony, the supreme court held that the judgment could not be reversed because the circuit court overruled the demurrer to the plaintiff's evidence. In so ruling, the court used the following language : " That it is such negligence for one to attempt to cross or get upon a railroad track at a public crossing or elsewhere without looking and listening for an approaching train, as precludes a recovery for an injury sustained by

him from a passing train or locomotive, whether the company's negligence also contributed directly to produce the injury or not, has so often been decided in this court that it must now be regarded as the settled law of this state. * * * This qualification is, however, recognized; that if the negligence of the company which contributed directly to cause the injury occurred after the party injured was, or by the exercise of proper care might have been, discovered upon the track by the defendant's servants in charge of the train in time to stop it and avert the calamity, the railroad company is liable, however gross the negligence of the injured party may have been in placing himself in his dangerous situation." To this qualification the court cite *Maher* v. *Pacific R. Co.*, 64 Mo. 267; *Harlan* v. *St. Louis, etc., R. Co.*, 64 Mo. 480, and 65 Mo. 22; *Adams* v. *Railroad Co.*, 74 Mo. 533.

It is clear from the doctrine of the foregoing case that the circuit judge committed no error in refusing to direct a verdict for the defendant. The deceased here, as the plaintiff there, stepped upon the defendant's track without making proper use of his eyes and ears; it may even be said that his negligence was gross. But there was here, as there, evidence tending to show that the defendant's train men were not in their places, in the proper discharge of their duty, exercising the care required of them while running within the limits of a populous city, keeping the proper look-out; and that, if they had been in their places, and keeping the proper look-out, they might have seen the deceased in time to check their train and prevent running over him. This evidence made a case for a jury.

2. From the statement of the ruling of the supreme court in *Kelley* v. *The Hannibal, etc., Railway Company* (*supra*), it is also clear that the circuit court committed no error in refusing to instruct the jury that the defendant was not liable unless its servants could have stopped the train in time

to prevent the injury, after becoming aware of the dangerous position of the deceased. On the other hand, it appears that the court ruled in direct conformity with the above-named decision, in qualifying the instruction which embraced this proposition, by adding the words, " or might have become aware of his dangerous position by using ordinary care." If this court has heretofore made any decision contrary to the rule thus laid down by the supreme court, it is no longer the law for us. We are bound by the last expression of the law made by the supreme court, whatever our views of its propriety may be.

3. In his closing address to the jury the plaintiff's counsel read against the objection of the defendant, a writing containing the following language : —

" What is ordinary prudence, depends not upon abstract propositions, but upon facts surrounding the case. Experience shows that in populous cities numbers of persons will be found upon railroad tracks : infants, blind men, insane and very aged persons may be there without fault upon their part. The accidents of life may and do bring these persons there in full possession of their senses. It is immaterial, so far as the duty of a railroad company to adopt precautions demanded by ordinary prudence is concerned, how the persons came there. The well-settled rule as to contributory negligence is, that, though the plaintiff has been guilty of negligence, and though such negligence may have contributed to the injury, yet if, by the exercise of ordinary care, the defendant could have avoided the result, the plaintiff's negligence is immaterial. This doctrine rests upon the basis, that he whose act is the efficient cause of the injury should be liable ; and even as against wrongdoers ordinary care is a primary duty. To none is it more essential that the rule be applied than to railway companies, and common regard for human life demands that its application should be insisted upon when they are running their

trains through cities. Here the testimony tends to show that a watchman properly placed could have seen and signalled in time to save the child."

The record does not show whether this language was an extract from some law book or judicial decision, or whether it had been written out by the plaintiff's counsel to be read as a part of his argument. It seems to contain matter which is partly argumentative and partly expressive of the proposition of law which the supreme court announced in the case of *Kelley* v. *The Hannibal, etc., Railway Company* (*supra*). We see nothing in it which was not in conformity with the instructions which the court had given, or which had a tendency to mislead the jury, and we cannot say that it was an abuse of discretion to allow it to be read.

The judgment must be affirmed. All the judges concur.