ANTON MERZ, Respondent, *v.* MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### December 4, 1883.

1. MUNICIPAL ORDINANCES — RAILROADS. — A municipal requirement that all trains propelled by steam shall sound the bell and shall have a brakeman and a lookout thereon, is not void for unreasonableness.

2. —— That such a requirement applies to trains moving over grounds of the defendant, which are open to the public, does not involve any property rights nor exonerate the defendant from the duty of observing the regulation.

3. —— POLICE POWER. — The city of St. Louis may, under its charter, pass such an ordinance as a police regulation.

4. RAILROADS — NEGLIGENCE — DAMAGES. — A failure, in violation of municipal regulations, to keep a brakeman and a lookout on the train, which

contributes directly to the injury, may render the defendant liable, not withstanding the plaintiff's negligence in not looking for the train, if, by the observance of such regulation the accident could have been avoided.

5. — It is negligence for a railroad company to send its detached cars, without a brakeman, over its own grounds which are open to the public, in the city of St. Louis.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed*.

E. A. ANDREWS, for the appellant.

FREDERICK GOTTSCHALK, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages by the father of a minor child, who was run over by one of the locomotives of defendant, thereby losing his arm. There was a verdict and judgment for the plaintiff for $1,703.

Another action by the boy himself for the damages occasioned to him by the same injury was appealed to this court, and the judgment affirmed at the last March term.    13 Mo. App. 589.

Counsel for appellant states in his brief that this case rests entirely upon different proof from that in the boy's own case. I have read the entire testimony in both cases, and I think that the testimony on behalf of plaintiff is so much the same in both, that the statement made by me in writing the former opinion might very well serve in this case. If the plaintiff's case was the same as before, it is quite immaterial for the purposes of this appeal that defendant may have strengthened his defence. The weight of the evidence was for the trial court; we are not concerned with that at all.

There was testimony tending to show that the accident happened on defendant's track in that part of St. Louis called Carondelet, in the block between Vine Street on the north and Stein Street on the south. A part of the ground

to the west of the railroad tracks is leased by defendant, and was being used as a quarry. Some men were quarrying there, for the lessee of defendant, at the time of the accident, and the son of plaintiff was engaged in hauling refuse from the quarry, to fill up around the railroad track. Two tracks ran north and south, to a switch somewhat north of Vine Street. The tracks were trestle work, but the ground had been filled up in most parts up to the ties, and in some places extended beyond the ties on the west. In other parts there was a sheer jump of several feet, if you wanted to leave the track. East of the track was an old building used by the quarrymen as a privy. The usual mode of reaching this privy was to get on the track, walk about thirty-five feet north, and go down. The privy could be reached by way of Stein Street, but that was a round-about way. The boy Joseph, who was a child of fourteen years at the time, left his cart at the west side of the track, and made his way to the privy, taking the nearest cut across the tracks. On his way back he passed under the eastern trestle work. As he approached the western track he saw a train of flat cars pass north. When it had passed, he got on the western track and walked south. He says he could not see from the center of the track to the switch. He listened and looked half round, but saw nothing. There was a high wind. He neither heard nor saw the cars until he was knocked down by them, after he had walked about twenty-two steps south on the track, and was within a step of reaching the point at which he could have left the track. He says he walked fast.

The locomotive which the boy had seen pass with flat cars, was engaged in "kicking" cars from one track to the other. The cars were run north to the switch. When they passed the switch, the brake was set in a manner that was calculated to stop cars in the middle of the block. The cars were then "kicked" by the locomotive, and ran south on the western track, with no one on them. The brake-

man and engineer at the switch saw the boy when the three flats were beyond their control, and they shouted ; but they were at the switch, over 300 feet from the boy.   He did not hear them.   The cars passed over his arm and stopped at from twenty to twenty-five feet beyond the place where he was struck down.

Very full instructions as to negligence and contributory negligence were given, at the instance of the plaintiff and defendant.   It is not necessary to set out or comment upon these instructions, since the appellant makes only two points in this court :   1st.   That the court erred in admitting in evidence a certain municipal ordinance ; and 2d, that the court erred in not sustaining defendant's demurrer to the evidence, because there was no evidence of negligence on the part of defendant, and the evidence of contributory negligence was such as to preclude a recovery.

1. The ordinance in question provides, that it shall not be lawful for any car or locomotive propelled by steam to run within the limits of the city of St. Louis at a speed exceeding six miles an hour ; and that, when moving, the bell of the engine shall be constantly sounded within said limits ; and, if any freight car, cars, or locomotives propelled by steam be backing within said limits, a man shall be stationed on the top of the car at the end of the train furthest from the engine to give danger signals ; and no freight train shall, at any time, be moved within the city limits, without it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engines.

It is contended that the city of St. Louis had no power to pass this ordinance.

The city has, under its charter, express power to regulate the use of all streets within its limits (Charter, Art. III., sect. 26, subd. 2), and to regulate all vehicles, business, trades, and avocations.   *Ib*. subd. 5.   But it is well settled, both on principle and authority, that the municipal authori-

ties of large towns have the right to adopt such ordinances as the one cited, by the virtue of their general supervision over the police of their respective jurisdictions. *Whitson* v. *City*, 34 Ind. 396 ; *Neier* v. *Railroad Co.*, 12 Mo. App. 25 ; *B. & N. F. R. R.* v. *City*, 5 Hill (N. Y.), 209. "We should entertain no doubt," says Judge Redfield (2 Redf. on Rys., 578), "of the right of the municipal authorities of a city or large town to adopt such an ordinance " (*e.g.*, one prohibiting the propelling of cars through any part of the city by steam) " without any special legislative sanction, by virtue of the general supervision which they have over the police of their respective jurisdictions."

It is contended that such an ordinance, if construed to apply to the right of defendants to run its cars and locomotives as it pleases over its private property, is unreasonable and unconstitutional, as depriving defendant of the use of its property, and taking its property without compensation and without process of law. We need not examine whether there might be anything in this view if the case were one of running trains over enclosed property belonging to defendant. We have already said in the case of Joseph Merz against this defendant, in regard to the same occurrence (13 Mo. App. 589), that, where a railway company lays down its track in a populous city, not within any enclosure, but on ground open to the public, the mere fact that the rails are not laid over a public highway, but upon private property of the company, ought not to be held to relieve the company of its obligation to observe all reasonable municipal regulations as to the movements of locomotives within the limits of the corporation. The ordinance, in terms, applies to all trains running within the city limits.

But all that has been addressed to us by counsel for appellants in this case, about private property and the right of a proprietor to use his own, seems to me entirely out of place, in view of the undisputed facts of this case. It would

seem to be the height of absurdity to hold that an imaginary line, a mere line upon a plat, not indicated by anything upon the ground, is to divide the ground upon which the corporation is bound to one degree of care from that on which it is bound to a less degree of care in moving its cars. Let it be granted that the company might send its cars from a point outside of its own property, at any rate of speed, without a brakeman, on to and over its private enclosure, it would not follow that it could do so on open ground free to the public. By license and by sufferance, the men working in the quarry were permitted to cross the track and at the point where the accident happened they were constantly doing so, and the track was open, besides, to the general public. The defendant was bound to exercise its rights, therefore, with a view to that use of its property which it had allowed, at least until it withdrew the permission ; and, when they permitted cars to run without a brakeman over portions of the road thus used, the agents of the company were clearly guilty of negligence.

The language of Judge Agnew in *Kay* v. *Pennsylvania Railroad* (65 Pa. St. 274), is very apposite : " In the present case the railroad company, for the benefit of trade, resulting in its own profit, built its tracks along the road basin, and left its lot open for the convenient access of the public in the handling of lumber, and transferring it to the cars upon its tracks. And the lot being thus open to all engaged in that business, it also suffered its tracks to be used by the neighboring population as a way across the lot, from one part of the city to another. As a consequence, people passed and repassed upon the tracks, and the company and its servants would be led to expect to find them there at nearly all hours of the day. It is not like those portions of the road used solely for the passage of trains, where the company would not only have a right to demand, but reason to expect a clear track. But the presumption of a clear track at this place could not reasonably

arise, if the circumstances were such as have been stated. A greater precaution against injury to those permitted to use the lot and the tracks of the company, became a duty. Was it a proper and prudent use of the track to detach and send the unattended car forward in the manner stated? It seems to us it was negligence. Certainly, no prudent, reasonable, and honest-minded man could think it unattended with danger to persons liable thus to be found upon the track, to send a car out of sight, round a curve, on a down grade, uncontrolled and unattended by any one capable of checking it in case of danger. Its only purpose was to save a few hundred feet of travel to the engine by detaching it from the car when in motion, and stopping the engine before it reached the switch, in order to permit it to run forward on the main track to hitch on to the cars. To save this short time and distance, life was perilled, and a serious injury inflicted.''

2. That plaintiff's son was guilty of negligence, is clear; but this fact was not necessarily fatal to plaintiff's case, because, if the negligence of the railroad company contributed directly to the injury, and occurred after the injured person might have been discovered on the track by defendant's servants in time to avert the accident by the use of proper care, the contributory negligence of the person injured will not serve to discharge the company from liability for the injury. *Kelly* v. *Railroad Co.*, 75 Mo. 138 ; *Eckert* v. *Railroad Co.*, 13 Mo. App. 352 ; *Merz* v. *Railroad Co.*, 13 Mo. App. 589.

But we need not go over this ground again. Nor is there any more evidence in this case, than there was in the former case in which the boy was plaintiff, that he was a trespasser. Trespass itself becomes right by sufferance and lapse of time. The boy was on the track, as the quarrymen with whom he was working were on the track, from time to time, and whenever they went to obey a call of nature ; and, of this, the agents of the company had notice ;

and it is not pretended that there was not at least a tacit consent on the part of the company to this use of the track by the persons working the quarry and dumping the refuse to fill up to the rails.

This case can not be distinguished from the former case between the boy and the defendant, to which we have referred. That case is decisive of this; and we see no reason to depart from anything decided or said in that opinion. Railroad companies, in the prosecution of their business, have no more right than have private citizens to run men down, or to impel dangerous machines through a city, with no one to control them, and in disregard of the lives and limbs of the citizens, even though by leaving the ponderous machine to follow the impulse it had received, without the possibility of the application of a timely check should a sudden danger intervene, the company may save a little time and a little money in the management of its affairs. And a trespasser, notwithstanding his trespass, may have redress for negligent injuries inflicted on him. *Injuria non excusat injuriam.* It is no defence to the reckless striking of a traveller by a locomotive, that he was loitering on the track. Where defendant has been guilty of a breach of public duty, which inflicts damage, he is not to excuse himself by the prior negligence of the person injured. Whart. Neg., sect. 348. The rule is well established, that though a person be injured whilst unlawfully on the railroad track, and contributes to the injury by his own want of care, yet, if the injury might have been avoided by the use of ordinary caution by the railroad company, the company is liable. *Brown* v. *Railroad Co.*, 50 Mo. 461.

Our attention is called to nothing in the record that can furnish any ground for disturbing the judgment; it will, therefore, be affirmed. All the judges concur.