JAMES KELLEY, Respondent, v. UNION RAILWAY & TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, June 2, 1885.

1. DAMAGES — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.— Evidence that a railroad employe at work in a stooping posture upon the track was struck and injured by a train slowly "backing" without ringing the bell, and without having a man on the foremost car, as required by ordinance, is sufficient to take the case to the jury.

2. ——— The negligence of the plaintiff in exposing himself to danger upon a railroad track without keeping a lookout for approaching trains, will not prevent his recovery if the defendant's servants saw, or with reasonable care might have seen, the danger in time to avert it.

3. ——— "Ordinary care" is such care as a person of ordinary prudence and caution would usually exercise in the same situation and under the same circumstances.

4. ——— ORDINANCES.—The ordinance of St. Louis requiring the bell to be rung and a man to be on the foremost car while a train is backing, applies to the moving of cars in private grounds of the railroad company

5. APPELLATE PROCEDURE.—This cause is certified and transferred to the supreme court under the provisions of the constitutional amendment adopted November 4, 1884.

APPEAL from the St. Louis Circuit Court, BARCLAY, J.

*Affirmed.*

S. M. BRECKINRIDGE and M. F. WATTS, for the ap-

pellant: ' The plaintiff's knowledge of the approach or the train and his failure to get out of its way will prevent his recovery, although the defendant failed to ring the bell and to have a watchman on the lookout. *Drain v. R. R.*, 10 Mo. App. 531; *O'Donnel v. R. R.*, 7 Mo. App. 190; *Henze v. R. R.*, 71 Mo. 636; *Fletcher v. R. R.*, 64 Mo. 484; *Harlan v. R. R.*, 65 Mo. 22; *Zimmerman v. R. R.*, 71 Mo. 476; *Hallihan v. R. R.*, 71 Mo. 113; *Rains v. R. R.*, 71 Mo. 164; *Nelson v. R. R.*, 68 Mo. 593; *Nolan v. Shickle*, 69 Mo. 336; *Maher v. R. R.*, 64 Mo. 267; *Moody v. R. R.*, 68 Mo. 470, 474.

A. R. TAYLOR, for the respondent: The plaintiff, Kelley, whilst at work putting down the rail to make connection with the defendant's track, was not a trespasser. Constitution of Missouri, article 12, sect. 18; *Kelly v. R. R.*, 11 Mo. App. 3. The instructions given by the court laid down the law precisely, following the decisions of this court and of the supreme court of Missouri. *Kelley v. R. R.*, 75 Mo. 140; *Eckert v. R. R.*, 13 Mo. App. 359; *Merz v. R. R.*, 14 Mo. App. 465.

THOMPSON, J., delivered the opinion of the court.

This is the same case which was before us on a former appeal, and is reported in 11 Missouri Appeals 1. It is not necessary to re-state the facts of the case at length, because on the trial from which this appeal is taken they were substantially the same as on that trial, with exceptions which will be noted. The plaintiff had a verdict and judgment for $2000.00.

I. The first question is, whether there was a case to go to the jury. It is manifest from the testimony of the plaintiff as given in full in the present bill of exceptions, that, since the former trial, he had become very well educated in the law of his case, and that his testimony was given with the purpose of making out a certain hypothetical state of facts which, according to his former testimony, did not exist. The substantial difference between what he then swore to and what he now swears to, is: 1. He then swore that he knew that this particular

train was moving; he now swears that he did not know it.
2. He then swore that trains were passing and repassing
continually upon the track where he was working. He
now denies this, and endeavors to make it appear that
they were not passing frequently. Plainly speaking, his
testimony, when compared with that given at the former
trial, seems to be contradictory, shuffling, and evasive;
though it is possibly consistent with good faith on the
part of the plaintiff. In both trials the testimony ap-
pears to have been reported by a stenographer, and we
see no reason to doubt the substantial accuracy of both
reports. But this is a matter which goes to the credi-
bility of his testimony, and which was, therefore, a ques-
tion for the jury. Although his statement on the present
trial that he did not know that the particular train,
by which he was hurt, was coming out of the tunnel, until
he looked around at it at the very moment when he was
struck by it, is directly contradicted by his testimony at
the former trial, which was put in evidence at this trial,
it was for the jury to say whether or not they would be-
lieve his present statement, and regard his former
testimony as the result of a mistake on his part in giving
it, or on the part of the stenographer who took it down.
He was not conclusively estopped from recovering on this
trial by his testimony on the former trial.

Taking, then, as we are entitled to do after a verdict in
the plaintiff's favor, the testimony given in his behalf as
true, for the purpose of inquiring whether he should
have been non-suited, it shows the following state of
facts: That the plaintiff, an old and experienced track
repairer, was engaged toward noon of a cold winter day
in screwing, by means of bolts, a fish plate to a T rail,
for the purpose of making a connection between a track
of the Missouri Pacific Railway company and that of
the defendant company; that, for the purpose of prose-
cuting the work more conveniently, he took a position
astride of a rail of the defendant's track, with his back
toward the northeast; that the place where he was at
work was between the Union depot, at Twelfth street, in
St. Louis, and the mouth of the tunnel at Eighth street;

that there were many tracks in the vicinity, and trains were constantly being made up in that vicinity, and cars and locomotives were frequently passing over the track where he was at work; that while he was in this stooping position a train of the defendant containing five or six cars came backing along its track out of the mouth of the tunnel from the northeast, at a lawful rate of speed, about four miles an hour, but without observing the precautions of ringing the bell of the locomotive, and of having a man posted on the car farthest from the locomotive to give danger signals, as required by an ordinance of the city; that the plaintiff, absorbed in his work, and relying upon hearing the bell or a danger signal from the man so stationed, did not hear the train as it thus approached him from behind, until the foremost car had almost reached him; that he turned and looked up, but not in time to avoid being struck by the car in the head and knocked over in such a position that one of his feet was run over by one or more wheels of the car and crushed so that his leg had to be amputated below the knee.

It appeared in evidence without dispute, that track repairers are by the rules of railway management, required to watch for approaching trains to signal to them when the track is not in a condition for them to pass, and to get out of the way of them when it is in such a condition. It was scarcely necessary to give evidence of the fact that it is the duty of a track repairer to get out of the way of an approaching train; because, as the train can not leave the track to pass around the track repairer, the latter must manifestly leave the track to let the train pass. But this does not answer the question involved. The track repairer is not a trespasser; he is lawfully upon the track; he may become absorbed in his work and not perceive the approach of the train. If the train backs up slowly upon him, ringing no bell, as required by law, and having no man on its foremost car to shout to him and admonish him of his danger when the car gets near him, as required by law, the negligence of

the railway company may be the proximate cause of the injury, and his negligence the remote cause.

We are embarrassed in the decision of this case by the fact that the decisions of our supreme court upon the question involved, have not been uniform. When the case was before us on the former appeal, the latest exposition of the law upon this subject by that court was found in cases in the 71st volume of the Missouri reports. In one of these cases, the supreme court had said: "It is the settled law of this state that, although the defendant may have been guilty of negligence contributing to produce the injury complained of, still, if the plaintiff was also guilty of negligence proximately contributing thereto, he can not recover, unless the negligent acts of the defendant occasioning the injury, occurred after he became aware of the danger to which the plaintiff, by his own negligence, had exposed himself." *Rains v. The St. Louis, Iron Mountain & Southern Railway Company*, 71 Mo. 164, 167. This doctrine was distinctly reaffirmed in a case in the same volume, which on its facts, was more nearly like the present case; and the qualification that, where the plaintiff had thus exposed himself by going upon a railroad track, without looking or listening for approaching trains, he could not recover damages for a hurt received by being struck by such a train, unless the jury should find that such hurt was produced by the omission of the defendant, *after becoming aware of the danger to which the plaintiff was exposed*, was put by the court in italics and applied in a case where, as in this case, the plaintiff's evidence tended to show that the approaching train was not in the observance of those statutory precautions enacted for the protection of persons upon railway tracks. *Zimmerman v. Railway Co.*, 71 Mo. 476, 484. These decisions were binding upon us as the latest exposition of the law upon this subject by our supreme court, at the time when we decided this case upon the former appeal. They controlled our decision upon that appeal.

But former decisions of our supreme court and of other courts had stated a different rule as applicable to

cases where a person upon a railroad track negligently fails to make proper use of his faculties by looking or listening for approaching trains, in consequence of which he receives a hurt from such a train ; and that rule was, that, notwithstanding his contributory negligence, such person might recover, provided those in charge of the approaching train saw his exposed position in front of them on the track, *or might, by the exercise of proper care, have seen it in time to avert the threatened calamity.* In the case of *Kelley v. The Hannibal, etc., R. Co.* (75 Mo. 138), a case which was decided subsequently to our former decision in the present case, the supreme court returned to this rule, and they have not, so far as I can see, departed from it since. It is a humane rule, conservative of human life and consonant with public policy. It is based upon a recognition of the fact that human beings may be, and frequently are, lawfully upon railway tracks, not only at highway crossings, but at other places ; that in such situations they may remain unmindful of an approaching train, and thus lose their lives, or sustain great bodily injury, if those in charge of the train do not give them some special warning of its approach. It also proceeds upon a recognition of the fact that a railway train or locomotive is an instrument of danger to persons who may happen to be upon the track whenever its wheels are in motion ; that those in charge of this instrument of danger ought, not only for the safety of persons who may happen to be upon the track, but, also, for the safety of persons who are upon the train, to keep a constant lookout in front of the train whenever it is in motion ; that this is a constant and continuing duty of a very imperative character, and that, if a discharge of this duty would have prevented the injury to a person negligently upon the track, the company may be liable in damages for hurting such person, notwithstanding his own negligence. We followed and applied this rule in *Eckert v. St. Louis, &c., R. Co.* (13 Mo. App. 352, 359) ; in *Merz v. Missouri Pacific R. R. Co.* (14 Mo. App. 459, 465), which were on their substantial facts similar to the present

case and, also, in a case not reported. Adhering to these decisions, based, as we understood them, upon the latest exposition of the law by the supreme court, we must hold in this case that the court committed no error in refusing to take the cause from the jury.

We are the more inclined to this holding, as the evidence upon the present trial left it open to the jury to find that the plaintiff did not, when he thus exposed himself on the defendant's track, know that this particular train was approaching. He did know it, as he plainly testified on the former trial ; and, therefore, we held that the failure of the servants of defendant to ring the bell and keep a man on the lookout on the foremost car to give danger signals, could not have contributed in any way to the injury, since the effect of the observance of these precautions would have been merely to apprise the plaintiff of what he knew without them. But as the present testimony may have authorized the jury to find that the plaintiff, not knowing that this particular train was approaching, but knowing generally that some train might be expected at any time to approach, relied upon hearing the sound of the bell, or, in case it approached very near to him, upon hearing a warning from the man on the lookout of the foremost car, we can not apply the same reasoning on this appeal. On this, as on the former trial, the plaintiff's testimony was distinctly to the effect that no such man was on the lookout; but the defendant's testimony was distinctly to the contrary effect, and the man who claims to have been so on the lookout was a witness for the defendant in the case. He testified that the train was fifteen or sixteen cars in length, and in this he was corroborated by other witnesses for the defendant ; although the plaintiff's testimony tended to show that it was but five or six cars in length. He testified that the engine was so far from the foremost car, and that the wind was blowing so strongly from the northwest, that the sound of the bell could not be heard. He also admits that he did not see the plaintiff on the track before he was struck, and he attempts to excuse his failure to see him by stating that a mass of black

smoke was drifting in front of his train from the chimney of an engine on another track. This improbable excuse was evidently not credited by the jury; and, as the testimony in the case showed that the train was moving but four miles an hour, a little faster than a horse walks, the jury was authorized by the physical facts of the case to find that if this man on the foremost car had been, as the ordinance required, on the lookout to give danger signals, he would have seen the plaintiff in his exposed position, bending over with his back toward the train, in time to give him such a warning as would have enabled him to get out of the way. *Res ipsa loquiter.*

II. The case was submitted to the jury upon six instructions, five of which were given by the court of its own motion, and one at the request of the defendant. Two of these relate to matters not controverted and need not be considered. The remaining four were as follows :

"1. The jury are instructed that at the time and immediately before plaintiff was injured (as shown by the evidence) he was negligent in failing to exercise ordinary care to observe the approach of the train that struck him ; consequently the jury should return a verdict in favor of defendant, unless they find the facts to be as set forth in the instruction number two, or instruction number three.

"2. It will be the duty of the jury to return a verdict in favor of the plaintiff, if they find from the evidence that no man was stationed on defendant's said train on the car farthest from the engine ; that, in consequence of such omission, plaintiff was not warned of the approach of said train in season to escape injury ; and that, notwithstanding the said negligence of plaintiff in the premises, said injury would not have occurred if such a man had been so stationed on defendant's said train, and had exercised ordinary care to warn plaintiff of danger after he discovered (or by the exercise of ordinary care on his part, could have discovered) that plaintiff was not observing the near approach of said train, and was in imminent danger of being struck by it.

"3. If the jury find from the evidence that a man was stationed on defendant's said train on the car farthest from the engine; that he failed to make any outcry or warning of danger after he could have discovered by the exercise of ordinary care on his part that plaintiff was not observing the near approach of said train, and was in imminent danger of being struck by it, and that, in consequence of such failure, the plaintiff was injured, then it will be the duty of the jury to return a verdict for plaintiff.

"4. The jury are instructed that 'ordinary care' as mentioned in these instructions, depends on the circumstances and facts of each particular case or situation with reference to which that term is used. It is such care as a person of ordinary prudence and caution would usually exercise in the same situation and circumstances. The jury are further cautioned that all the instructions given to them in this cause are to be considered together and as explanatory of each other, excepting that number six, which is only to be considered in event the jury decide to find a verdict for the plaintiff under the other instructions given."

The court refused fourteen instructions offered by the defendant. No instructions were offered by the plaintiff. We need not consider the instructions refused. It is sufficient to say that it was not error to refuse them, though in themselves correct, if the case was properly put to the jury upon the instructions which were given. But it is apparent, upon reading them, that some of them were erroneous in point of law, that others were argumentative, and that others advised the jury how to decide facts which were within their exclusive province. If they had been given and the verdict had been for the defendant, it is quite clear that it could not have stood.

Concerning the instructions which were given, they seem to have been drawn with a careful analysis. They put the case to the jury in strict conformity with the principles of law above laid down. Without discussing them in detail, we think it sufficient to say that they were clear, consistent with themselves, and that we en-

tirely approve of them, both in respect of their form and substance.

III.   Objection is made that the court erred in admitting in evidence the ordinance of the city of St. Louis already spoken of, and in refusing an instruction to the effect that the ordinance was not applicable to the defendant, because the place of the injury was not a street or thoroughfare, but was private property of the defendant used in the prosecution of its business.   This precise question has been twice before us in respect of another ordinance of the city of the same nature, and we held that it applied to the private unenclosed grounds of railway companies within the city, as well as to other places.   *Joseph Merz v. Missouri Pacific Ry. Co.,* 13 Mo. App. 589; *Anton Merz v. Missouri Pacific Ry. Co.,* 14 Mo. App. 459, 463.   To these decisions we must adhere.

No other question arises upon the record which seems to require attention.   The judgment of the circuit court should be affirmed.   Judge Lewis concurs.   Judge Rombauer, dissenting, is of opinion that this decision is contrary to a previous decision of the supreme court. The cause will, therefore, be certified and transferred to the supreme court, as directed by section six of the constitutional amendment, adopted on November 4, 1884.

Dissenting opinion by ROMBAUER, J.

My associates, as well as myself, believe, that the opinion filed herein, is contrary to some previous decisions of the supreme court, and that the cause is a proper one to be certified to that court, under the provisions of section six of the constitutional amendment, adopted November 4, 1884.

The difference between my associates and myself is,

that they hold the opinion to be in conformity with the last previous ruling of the supreme court on the question of law involved, while I am of opinion that all the cases decided by the supreme court may be reconciled, and lead to a result adverse to the right of the plaintiff's recovery in this case. But I am still further of opinion that even if all the previous rulings made by the supreme court on this subject could not be reconciled, still, under the authority of *Lenix v. Railway Company* (76 Mo. 86), which is the last previous ruling of the supreme court on this question, the plaintiff in this case, on the facts shown, can not recover.

In that case, Chief Justice Sherwood, speaking with the concurrence of all the judges, says: "The duty of one who goes upon a railroad track, even where there is a street crossing, as is not the case here, has been so often defined, that it grows monotonous to be continually reiterating the same principle. He must use his eyes and his ears, he must look and listen, and if he fails to observe these most obvious dictates of prudence, when approaching such dangerous machinery as a moving railroad train, he has no room for just complaint if he suffers injury solely because of his neglect to use such reasonable and prudent precautions, although the railroad company has been remiss in its duty in giving the customary signals."

The testimony is fully set out in the report of that case. An examination will disclose the fact, that it was far more favorable to the plaintiff, than the testimony in this case. The jury found for the plaintiff below and the supreme court reversed the judgment without remanding the cause, holding that under the facts of the case the plaintiff was debarred of any recovery.

The supreme court, in its ruling in that case, merely

followed a long line of decisions on the same subject, asserting the same, in terms more or less positive, as demanded by the facts of each particular case. See *Maher v. Railroad Co.*, 64 Mo. 267; *Fletcher v. Railroad Co.*, 64 Mo. 484; *Harlan v. Railroad Co.*, 64 Mo. 480; *Moody v. Railroad Co.*, 68 Mo. 470; *Nelson v. Railroad Co.*, ibid 593; *Henze v. Railroad Co.*, 71 Mo. 636; *Rains v. Railroad Co.*, 71 Mo. 164; *Zimmerman v. Railroad Co.*, 71 Mo. 476; *Kelley v. Railroad Co.*, 75 Mo. 138.

Several of these cases recognize one exception engrafted on the general rule, namely, that notwithstanding his own negligence, which would otherwise debar him, the plaintiff might still recover, provided those in charge of the train might have averted the calamity by the exercise of reasonable care, after becoming aware of the danger to which the plaintiff was exposed. This exception is dictated by the plain rules of humanity. It means this and no more, that recklessness on the one part does not excuse wilful recklessness on the other. That the modern juggernaut can not claim its victims as a matter of right, though they prostrate themselves headlong before its wheels. But it does not in my opinion mean, that that element must be submitted to the jury regardless of the facts of the case, because, if that is its meaning, then the exception was denied in *Lenix v. Railroad Co.*, *supra*, and that is the last decision of the supreme court on that subject.

The only just mode to give effect to the exception, whenever the facts of the case justify it, is to declare that although the evidence discloses that the plaintiff was himself reckless, he shall not be debarred of his recovery, if he shows affirmatively that the employes of the defendant, after discovering his danger, might have

averted the calamity by the exercise of reasonable care. To say in one breath that the plaintiff can not recover, because he was reckless himself, though the defendant's servants failed to blow the whistle, failed to ring the bell, or failed to have a man stationed at the rear car of a train moving backward, all of which are legal requirements, and then say in the next breath that he might still recover, if by the ringing of the bell or blowing of the whistle, he would have been warned away, or by the stationing of a man on the rear car he *might* have been discovered and warned away, savours of inconsistency.

Applying these propositions to the facts of this case, and they furnish no room on which the plaintiff's recovery can stand. The uncontradicted testimony discloses that he was a track repairer, had been such for many years, and was thoroughly familiar with the dangers of his task. That at the place where he was working, engines and trains were moving to and fro, all the time. That it is a rule of track repair, that trains do not stop on account of men engaged in the work, unless they are signaled to do so, but that it is expected of the men repairing the track to get out of the way. That he was familiar with this rule. That the track on which he was working was free to view on either side of him for several hundred feet. That he was neither deaf nor blind, but in full possession of his faculties. That he could have seen the approaching train if he had looked, and could have heard it if he had listened, are incontestable physical facts, which can not be overthrown by his oath to the contrary. There is absolutely no testimony that he was seen in his dangerous position by any person in charge of the train. As far as there is any testimony on the subject, it tends to show that he was not seen. Conceding, however, that he *might* have been seen by a per-

son stationed at the rear of the train moving backward, still there is no testimony whatever that the train could have been stopped, or that he could have been warned away after he *might* have been discovered *in a position of danger*.

How near must a train approach before a track repairer, whose duty, under the rules, it is to get out of the way, can reasonably be supposed *to be in a position of danger?* How near must a train get to him before the parties in charge thereof can be presumed to know that he neither sees nor hears the approaching train, and should be warned? Is the degree of diligence to which the law holds persons in charge of a train, to be increased in proportion to the recklessness of the person in danger? This, indeed, would be holding out a premium to recklessness, which is but ill designed to promote that safety to life and limb which, after all, is the ultimate aim of the statute.

In conformity with what I deem to be the adjudged law of the state, as well as the rule dictated by reason and a sound policy in this case, I am unable to agree with my associates.

It is my opinion that the judgment of the trial court should be reversed.