MARY JANE HICKMAN, Respondent, v. THE UNION DEPOT RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, November 24, 1891.

1. **Street Railroads :** CONTRIBUTORY NEGLIGENCE : OBLIGATION TO LOOK AND LISTEN. If a street railway is operated by electricity, one who crosses its tracks upon a street is bound to look and listen, especially when he knows that cars thus operated run upon the tracks crossed by him ; and *held* that an instruction that it was the duty of the plaintiff to look and listen, if by so doing he could have avoided the injury sued for, should have been given under the facts of this case.

2. —— : —— : OBLIGATION OF DRIVER OF CAR TO AVOID INJURY. Although a plaintiff is guilty of negligence in crossing the tracks of a street railway, thus operated, the railway company is nevertheless liable to him for the damages suffered by him in consequence of his being run into by one of its cars, if the driver of the car either saw, or by the exercise of ordinary diligence could have seen, the peril of the plaintiff in time to have avoided the collision.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*G. A. Finkelnburg*, for appellant.

It is the duty of a person before driving across the tracks of an electric railway to look and listen for approaching motor cars and to stop, if necessary, to avoid collision. Defendant's first instruction refused should have been given. *Harlan v. Railroad*, 64 Mo. 480 ; *Fletcher v. Railroad*, 64 Mo. 484, and authorities there cited ; *Henze v. Railroad*, 71 Mo. 636 ; *Stepp v. Railroad*, 85 Mo. 229 ; *Damrill v. Railroad*, 27 Mo. App. 202 ; *Burbridge v. Railroad*, 36 Mo. App. 670. And,

if a person fails to look and listen and is injured in consequence thereof, he cannot recover, although the defendant railway company may also have failed to observe some statutory or municipal requirement on its part. Cases cited, *supra*. (2) Plaintiff's instruction, numbered 2, was inapplicable and misleading, in view of the circumstances of this case as established by the undisputed evidence. (3) Defendant's second instruction refused should have been given ; it defines the true relation which must necessarily exist between railway cars and other vehicles upon the public streets and the relative duties of those in charge of them. Elliott on Roads and Streets, p. 577 ; *Fleckenstein v. Railroad,* 105 N. Y. 655 ; *Railroad v. Bert,* 69 Ill. 388 ; *Adolph v. Railroad,* 65 N. Y. 554; *Hegan v. Railroad,* 15 N. Y. 386 ; *Railroad v. Islely,* 49 N. J. 416 ; *Eswin v. Railroad,* 96 Mo. 290, 297. (4) The verdict in this case was against the law and the evidence, and should have been set aside by the trial court. *Harlan v. Railroad,* 64 Mo. 480 ; s. c., on rehearing, 65 Mo. 22. Where the verdict of the jury is manifestly against the law and the evidence, an appellate court will reverse the judgment. *Ackley v. Staehlin,* 56 Mo. 558 ; *Morris v. Barnes' Adm'r,* 35 Mo. 412 ; *Wilson v. Albert,* 89 Mo. 544.

*J. F. Merryman,* for respondent.

The same degree of care is not required of persons crossing or passing along street railway tracks that is required in the case of persons crossing or walking along the tracks of ordinary railroads. Elliott on Roads & Streets, pp. 589–590 ; *Lynam v. Railroad,* 114 Mass. 83–88. The franchise of a street railway company is a mere easement to use the highway in common with the public generally, and they have no higher right to the street than the humblest pedestrian. Beach on Cont. Neg., p. 300. The individual right of every citizen, no matter of what age or sex, whether sane or insane, lame

or halt, blind, deaf or dumb, to pass and repass on this highway, is of the same nature as his dominion over his own premises. So long as it is used as a highway, without prejudice to the rights of others to a similar use, the right of use is absolute and unqualified. BRICKEL, Judge, in *Railroad v. Hanlon*, 53 Ala. 80–81. (2) A steam railroad company owns the land on which it runs its train, or, if it does not, its easement is an exclusive right to use the land, except at public crossings. The steam railroad track is not a "King's Highway." Beach on Cont. Neg., p. 300 ; *Railroad v. Norton*, 24 Penn. St. 465. Hence to sanction a rule that would impose the same obligation upon persons using the tracks of a street railway company (having a mere easement in common with the public generally, *supra*) as that which obtains where a party crosses or walks along a steam railroad track, would be to practically surrender a street to the railway company. Elliott on Roads & Streets, p. 590 ; *Shea v. Railroad*, 45 Cal. 425 ; *Johnson v. Railroad*, 20 N. Y. 65 ; Shearman & Redfield on Neg., secs. 462, 463. (3) Plaintiff's instruction, numbered 2, was warranted by the testimony of Powhattan Hickman, the motorman, Disse and the conductor Smith. "The servants of a street railway company are not justified in running down a person or vehicle caught upon their track." Thompson on Negligence, p. 397; *Railroad v. Gladmon*, 82 U. S. 401–409 ; *Adolph v. Park Co.*, 65 N. Y. 555. On the contrary it is the duty of an employe of a street railway not only to see that the track is clear, but to exercise a constant watchfulness for persons who may be approaching the track. *Baltimore Railroad v. McDonald*, 43 Md. 534–553 ; *Commonwealth v. Railroad*, 107 Mass. 236. It was as much the duty of the railway employes to look out for plaintiff's driver on the track as it was for him to look out for a train. *Kelly v. Railroad*, 101 Mo. 78. (4) Even in crossing the tracks of steam railways it depends upon circumstances, and cannot be

invariably affirmed as a matter of law, that a traveler must stop, look and listen. *Huckshold v. Railroad*, 90 Mo. 552; *Kelly v. Railroad*, 101 Mo. 67; *Donohue v. Railroad*, 91 Mo. 357. The citizen who, on a public highway, approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable in law with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. *Ernst v. Railroad*, 33 N. Y. 28; *Newson v. Railroad*, 29 N. Y. 390; *Johnson v. Railroad*, 20 N. Y. 74; *Hagan v. Railroad*, 15 N. Y. 383. The law will never hold it imprudent in anyone to act upon the presumption that another in his conduct will act in accordance with the right and duties of both. *Newson v. Railroad*, 29 N. Y. 390. In case at bar plaintiff not seeing the train or hearing a bell had a right to presume that the train was being run not in violation of, but according to, the mandate of the ordinance. *Donohue v. Railroad*, *supra ; Schlereth v. Railroad*, 96 Mo. 509; *Erwin v. Railroad*, 96 Mo. 290. The violation of municipal ordinances which regulate the speed of trains is negligence *per se*. *Keim v. Railroad*, 90 Mo. 321; *Karl v. Railroad*, 55 Mo. 476; *Maher v. Railroad*, 64 Mo. 267; *Bergman v. Railroad*, 88 Mo. 678.

BIGGS, J.—The defendant owns and operates an electric street railway in the city of St. Louis. The ordinances of the city, conferring the right to the use of the streets, among other restrictions, prohibit the defendant from running its cars at a greater rate of speed than fifteen miles an hour. The road has a double track, and it extends north and south along the center of California avenue. This avenue is sixty feet wide, and is intersected at right angles by Keokuk street, of like width. On the night of October 11, 1890, the plaintiff's son, while driving the plaintiff's horse and buggy, attempted to cross the defendant's

track at the intersection of the above-named streets. There was a. collision with one of the defendant's cars, which resulted in damage to the horse and buggy. The present action originated before a justice of the peace to recover the damage, The plaintiff alleged that the collision was brought about by the negligence of the defendant's servants in running the car. The defendant denied that its servants were careless or negligent, but averred that the accident was directly produced by the negligence of the driver of the horse. The plaintiff had judgment, both before the justice and in the circuit court, and the defendant, by successive appeals, has brought the case to us for review.

The defendant complains of the action of the court in giving and refusing instructions. Two assignments are based on the action of the court in refusing instructions asked by the defendant. The assigments may be considered together.

The refused instructions are as follows:

"You are instructed that it was the duty of the person driving plaintiff's buggy, before crossing defendant's railway tracks, to look and listen · for approaching railway cars, and if you find from the evidence that the person in charge of plaintiff's buggy failed to look and listen, and that by looking and listening he might have observed the approaching motor car in time to avoid a collision, and that by the exercise of reasonable care he might have avoided such collision, then you will find for the defendant."

"You are instructed that the defendant's cars have the preference in the use of its tracks, and that the driver of plaintiff's horse and buggy had no right to drive upon the railroad tracks so as to obstruct or unnecessarily interfere with the passage of defendant's motor car; and, if the person in charge of the buggy drove upon said track without necessity, when a car was approaching at a short distance, and in sight, he

was bound to exercise more care and diligence than he would in driving upon a common roadway to see that the car was not impeded and to avoid collision. It was the duty of plaintiff's driver, under such a state of facts, to stop the vehicle or to turn aside to avoid the car, and if, through negligence or wilfulness on his part in this respect, a collision ensued the plaintiff is not entitled to recover damages against the defendant, provided the defendant exercised reasonable diligence to avoid the accident after it became aware of the danger to which plaintiff had been exposed."

The determination of these assignments requires a discussion by us of the nature and extent of the right of the defendant to the use of the streets for its railway, and the degree of care necessary to be exercised in running such a road to avoid injury to persons and property lawfully on the streets. And the questions thus presented necessarily involve the corresponding duty and care of the citizen, while using the street, to avoid such injuries.

The court told the jury in its instructions that, if the driver of the horse failed to exercise "ordinary care" in approaching the defendant's railway tracks, or in attempting to cross them, then he was guilty of contributory negligence, and the plaintiff could not recover, unless the jury further found that the defendant's servants in charge of the car could have stopped it in time to have avoided the collision, after they saw, or by the exercise of ordinary vigilance could have ascertained, the perilous position in which the horse and buggy were placed. The aim of the defendant's first instruction, which the court refused, was to supplement this charge, by informing the jury that, under the circumstances of this case, "*ordinary care*," as used in the court's instructions, required the driver of the horse and buggy to listen and look for approaching cars on the defendant's road. It is conceded that this

is the law applicable to steam railways, but the plaintiff's counsel argues that no such duty is imposed by law on a person approaching the crossing of an electric or cable railway.

In the discussion of this question we are substantially without precedent to guide us in its solution, because we are dealing with a new means of transportation, and a new use of the streets. But the principles of the common law are so comprehensive that they find ready application and govern in all business transactions, however novel or complex. When railroads were constructed, and the steam engine or locomotive was invented, the courts readily applied the principles of the common law to this new and dangerous agency, and, among other things, decided that it was negligence to run such a dangerous thing as a locomotive across a public highway or street without giving some warning of its approach. It is upon this principle that our legislation on the subject is based. The courts also decided that, although all persons were entitled to the free use of the public highways and streets, yet it was negligence for anyone to cross a railroad track at the crossing of a public highway without looking and listening for the cars. When the courts were asked to apply the same rule to a person crossing the track of a street railway, where the cars were drawn by horses, it was held that the same degree of watchfulness ought not to be exacted, because horse cars are not run at the same rate of speed as steam cars,—are not attended with the same danger, and are not so difficult to check. Some of the courts also placed this rule on the additional ground that the horse railway had not the same right to the use of its track as a steam railway had to its track. We admit that the right of occupation is different, but we are not clear that this difference of tenure affords any reason for a different degree of vigilance on the part of the citizen. But we are not dealing with a horse-car case. We have here an electric railway, a new and different motor

power, and we are called upon to lay down some general rules which should govern in its operation, and also say whether persons, before attempting to cross the track of such a railway, should look and listen for the cars. We do not think that it could be successfully maintained that the law requires only that degree of care in operating an electric road, which it exacts in running horse cars. The degree of watchfulness ought to be much greater in the one case than the other, because the danger of collision from an electric car is much greater by reason of its greater speed and momentum. We, therefore, think that the law requires, and common prudence dictates, that persons in charge of an electric car, should not only keep a strict watch along all portions of the route, but that they should give warning of the approach of the car to a street or other public crossing. It is for like reasons that we think that a greater degree of watchfulness is imposed on the citizen in the one case than the other. It is asking but little of a person to use his eyes and ears in traveling along the streets of a populous city, especially when he knows, as it appears that the driver of the horse did in this case, that he is approaching the crossing of an electric or cable road. Therefore, we are unable to see why the courts should not so instruct the jurors, where electric or cable roads are concerned. It is done every day in steam railway cases, where the conditions are substantially the same. Our conclusion is that the court committed error in refusing the defendant's first instruction. Whether the error was harmless or not, depends upon other facts and circumstances which we will notice further on in this opinion.

The refusal of defendant's second instruction was proper. It is true that it is the duty of a person driving a wagon or other vehicle along a public street to give the right of way to the cars of a street railway, and it is wrong for such person to unnecessarily interfere with or obstruct the passage of cars. But the fact that such person drives onto the tracks of a street railway does

not make him a trespasser thereon. He has a right to be there, but he must turn aside when he meets a car, or when it is necessary to let one pass. If he is placed in a position of peril by driving on or across the railway track, it is the duty of the person running the car, from which danger is to be apprehended, to use ordinary care, that is, a careful watch, to *discover* the danger to which he is exposed, and to exercise reasonable diligence to avoid the accident, and the defendant's second instruction was faulty because its closing sentence did not contain that qualification.

Let us now examine the evidence bearing on the accident, to determine whether the refusal of the defendant's first instruction was harmless. The presumption is that it was prejudicial. While we decide that it was the duty of the plaintiff's son to look and listen for cars before he attempted to cross the tracks of the defendant's road, yet a failure to do so did not amount to contributory negligence on his part, unless it can be reasonably inferred that, if he *had looked and listened*, the accident would not have happened. He testified that the motorman failed to ring the bell, but the motorman and conductor testify that the bell was rung. Under the defendant's evidence, therefore, the plaintiff's driver could have heard the bell, had he listened. He testified that he looked for the car before he came to California avenue, but, on account of an embankment and fence on the south side of Keokuk street, he could only see down the avenue for fifteen or twenty feet. He also declared that, when he reached California avenue, he looked each way for cars and did not see any, although he confessed that his view was unobstructed for several blocks in the direction of the car; that the car carried a large headlight and must have been in sight at the time he looked. These latter physical facts, which are conceded, force us to the conclusion that the witness was mistaken when he testified that he

looked and did not see the car. As well might we be asked to accept the statement that he looked for the sun on a clear day, and failed to see it. The evidence tended to prove that the horse was going five or six miles an hour; that he could have been checked or stopped very quickly, and that his head was some twelve or fifteen feet from the track on which the car was approaching when the driver first reached a point from which he had an unobstructed view of the track. These facts to which the driver of the horse testified have a tendency to prove that the accident could have been avoided, if the driver had only looked, and made proper efforts to stop his horse after he discovered the car. We, therefore, conclude that the circuit court committed prejudicial error in refusing the defendant's first instruction. Without it, the jury might have concluded that it was not the driver's duty to look for cars.

The judgment will be reversed, and the cause remanded. All the judges concur.

### ON MOTION FOR REHEARING.

BIGGS, J. — A re-examination of the questions involved in this case has confirmed us in the correctness of our opinion.

We stated that the rule in this state was, that persons traveling on the streets or public highways must, in approaching the crossing of a steam railroad, look and listen for cars. We also stated that this was conceded by the plaintiff's counsel. We certainly so understood him on the argument. But he assures us that we were mistaken in this, and he vigorously protests against being placed in a false position "before the bar of Missouri." We cheerfully make the correction, but, in spite of our mistake, we are still of the opinion that we stated the general rule correctly. *Kennayde v. Railroad*, 45 Mo. 255; *Tabor v. Railroad*, 46 Mo. 353; *Zimmerman v. Railroad*, 71 Mo. 476; *Langan v. Railroad*,

Hickman v. The Union Depot Ry. Co.

5 Mo. App. 311 ; s. c., 72 Mo. 392 ; *Petty v. Railroad*, 88 Mo. 306 ; *Harlan v. Railroad*, 64 Mo. 480 ; s. c., 65 Mo. 22 ; *Fletcher v. Railroad*, 64 Mo. 484 ; *Henze v. Railroad*, 71 Mo. 636 ; *Drain v. Railroad*, 10 Mo. App. 531 ; s. c., 86 Mo. 574 ; *Lenix v. Railroad*, 76 Mo. 86 ; *Stepp v. Railroad*, 85 Mo. 229 ; *Moberly v. Railroad*, 17 Mo. App. 518 ; *Kelley v. Railroad*, 18 Mo. App. 151 ; *Bergman v. Railroad*, 88 Mo. 678 ; s. c., 13 Mo. App. 352 ; *Kimes v. Railroad*, 85 Mo. 611 ; *Johnson v. Railroad*, 77 Mo. 546 ; *Purl v. Railroad*, 72 Mo. 168 ; *Hixson v. Railroad*, 80 Mo. 335 ; *Turner v. Railroad*, 74 Mo. 602 ; *Taylor v. Railroad*, 86 Mo. 457 ; *Huckshold v. Railroad*, 90 Mo. 548 ; *Donohoe v. Railroad*, 91 Mo. 357 ; *Yancey v. Railroad*, 93 Mo. 433 ; *O'Connor v. Railroad*, 94 Mo. 150 ; *Butts v. Railroad*, 98 Mo. 272 ; *Moberly v. Railroad*, 98 Mo. 183. There are exceptions to all general rules of law, and there might be such a state of facts as to lead the courts in a given case to disregard the one stated. But as the facts disclosed in the present action showed that the driver of the horse lived near California avenue ; that he knew that an electric railway was constructed on that street, and it was then in operation ; that there was nothing to prevent him from hearing a bell on the car, if one had been rung ; and that his horse's head was ten or twelve feet from the railroad track when he arrived at a point where he had an unobstructed view ; we deemed it unnecessary ( and still think so ) to discuss the modifications, in some decisions, of the rule stated in all the cases above cited.

The views of the plaintiff's counsel concerning the functions of an appellate court are quite peculiar. It is perhaps to this, that the extreme "heat", which is manifested in his printed argument, is to be attributed. He seems to think that we decided, as matters of fact, that the bell *was rung*, and that the driver, after he arrived at a place where he had an unobstructed view of the track, *could have stopped the horse in time to have prevented the accident.* We merely decided that there was

evidence that the bell *was* rung ; that there was some evidence tending to prove the other fact ; and that it followed that the refusal of the defendant's instruction was prejudicial. It was not necessary for us to state the opposing evidence.

The case stands this way for retrial : If the persons in charge of the car were running it at a rate of speed greater than provided by ordinance, or if they failed to ring the bell when approaching the crossing of Keokuk street, then they were guilty of negligence, and the defendant must answer for all resulting injuries to plaintiff's property, unless the driver of the horse was guilty of contributory negligence ; that is, failed to listen and look for the approaching car before attempting to cross the track, when by so doing the accident could have been avoided. And even though the driver *was thus* guilty of contributory negligence, yet the defendant would still be liable, if the persons in charge of the car saw, or by the exercise of ordinary diligence could have seen, the perilous position of the plaintiff's property in time to have avoided the injury to it. This is the practical effect of our decision, and we do not think that it is so far-reaching in its effects as " to give to the defendant the right of California avenue in preference to the citizens of the city,'' as stated in the motion for rehearing. The fears of the plaintiff's counsel in this respect are groundless.

There is a technical objection to the defendant's first instruction, which the court refused, which ought to be remedied on a retrial. It does not contain the modification that the defendant would in any event be liable, if its servants saw, or by the exercise of reasonable vigilance could have seen, the horse and buggy in time to have prevented the collision. The recent decisions of the supreme court seem to hold that an omission of this kind is not reversible error or good ground for refusing an instruction, where the other instructions contain

the necessary qualification. We think, however, that where an instruction purports to cover the whole case, it would be better if it stated the whole law.

The motion for rehearing will be denied. All concur.