WILLIAM M. SMITH, Respondent, v. THE CITIZENS RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1892.

1. **Street Railways:** CONTRIBUTORY NEGLIGENCE OF TRAVELER INJURED ON HIGHWAY. When a traveler on the streets of a city approaches a street railway operated by cable—in this cause he knew that the railway was being thus operated—it cannot as a matter of law be ordinarily regarded as his duty to stop, but he is bound to make a fair exercise of his faculties before driving upon a point of danger, and, to this end, he is bound to listen for the customary signal, and to look for the approach of trains unless his view is obstructed, and a failure so to do will constitute contributory negligence upon his part, if he is injured in consequence.

2. ———: ———: LIABILITY OF STREET RAILWAY COMPANIES. Notwithstanding such contributory negligence on the part of the injured traveler, the street railway company will be responsible for injury caused to him through a collision with one of its trains, if the person in charge of such train saw him in time to have averted the injury, or, by the exercise of ordinary and reasonable care in keeping a lookout in front of him, might have discovered him at the point of danger in time to have avoided the injury. But *held* that the evidence in this cause did not establish such ground for liability.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED.

*Smith P. Galt*, for appellant.

*M. McKeag*, for respondent.

THOMPSON, J.—This action was commenced before a justice of the peace to recover damages for injuries received by the plaintiff in a collision with one of the cars of the defendant's railway. On trial anew in the circuit court before a jury, the plaintiff had a verdict and judgment for $45, and the defendant prosecutes this appeal. This verdict was, beyond all question, a compromise verdict, as the plaintiff proved actual expenditures by reason of the injuries to the amount of $76, and there was no countervailing evidence. He also proved that he was laid up eight days by reason of the hurt. We have come to the conclusion, after reading the record, that the case must be disposed of on the assignment of error that the court, at the close of the whole case, should have directed the jury that the plaintiff could not recover.

The defendant is a corporation operating a street railway on Morgan street in the city of St. Louis, propelled by the well-known underground cable by means of a grip extending down to it through a slot fixed in

the street.   At the place where the collision took place
its customary and limited rate of speed was eight miles
an hour.   The plaintiff was a merchant engaged in the
sale of hardwood lumber in the city of St. Louis, having
a half interest in a partnership firm engaged in that
business, the volume of the trade of the firm being
about $1,000 a day.   The plaintiff was in the habit of
driving in a buggy over the streets of St. Louis, and
had been for many years.   He had been accustomed to
drive horses ever since he was a boy.   He had driven
the horse, which he was driving at the time of the collis-
ion, for two or three years, and there was no evidence
tending to show that the horse was not ordinarily
gentle, tractable and roadwise.   In the daytime, in a
top buggy, the top of which was partly thrown back so
that the sides did not obstruct his view, he was driving
northward on Eleventh street, at the intersection of
that street with Morgan street.   His rate of speed was
about five miles an hour and was a trot, as described
by himself—or a dog-trot, as described by one of his
witnesses.   Morgan street is fifty feet wide from one
building line to another, and thirty feet wide from curb
to curb, and the defendant's railway is a single track
railway running along the center of Morgan street.   As
the plaintiff approached the intersections of the two
streets, a train of the defendant's cars approached the
same intersection from the west.   The plaintiff and
three of his witnesses testified that they did not hear
the customary signal, which consisted of the ringing
of a bell or striking of a gong by the gripman;
and one of the plaintiff's witnesses stated that he was
looking at the gripman, and would have seen him if
he had given the signal.   The evidence adduced by the
defendant, on the other hand, was to the effect that the
signal was given in the customary way, and at the
usual distance from the point of intersection, to-wit,

fifty to one hundred feet. The plaintiff's case, made by his own testimony, was that, knowing there was a cable railway on Morgan street, and listening for the customary signal, which is given by such railways on approaching the crossing of another street, not only in this but in other cities, and not hearing the signal, he was not apprehensive of an approaching train and drove forward. When at the point where he, sitting in his buggy, was about twenty feet from the defendant's track, and when the head of his horse was about ten feet from the defendant's track, he saw the train approaching at a distance from him of twenty to thirty feet. He claims that he could not have seen it at an earlier period. He also claims that at the gait at which his horse was going it was impossible for him to stop his horse, and, therefore, the only thing he could do was to whip up his horse and endeavor to get across the track ahead of the train. This he attempted to do, but, while clearing the track, the rear of the buggy was struck by the gripcar and he was thrown out, and the buggy and harness were injured. One of the plaintiff's witnesses testified to the effect, that the gripman did all that he could to avert the injury after seeing the plaintiff driving across the street in front of him; that he threw both brakes—the wheel brake and the track brake—and endeavored to stop his car in the shortest possible space of time.

The plaintiff, at the outset of his narrative on the witness stand of the way, in which the collision happened, laid stress on the fact of his listening for the signal, but did not say anything about looking for the approaching train. It was only when his attention was directed to the matter of looking, and chiefly on his cross-examination, that he claimed that, by reason of the obstruction of buildings, he could not have seen it sooner than he did. The undisputed physical facts

contradict this statement, and conclusively contradict it.
The defendant's superintendent took accurate meas-
urements of the ground, including the width of the
street, and testified that, at the distance of thirty feet
south of the center of the central point of the intersec-
tion of Eleventh and Morgan streets, a person looking
westward up Morgan street could see to the distance of
two hundred and twenty-two feet, and that at a dis-
tance of thirty-five feet south from this point of inter-
section the vision was unobstructed up Morgan street
so that a train could be seen to the distance of one
hundred and five feet. No attempt was made to con-
tradict this testimony, and it accords with the obvious
physical facts when a statement of the width of Morgan
street is given.

It has long been settled in this state and elsewhere,
in cases where travelers have received injuries from
collision with steam railway trains at crossings, that it
is the duty of the traveler to exercise his faculties on
approaching such a crossing, that is, to look and listen.
Our supreme court has gone even further, and has in
several cases established the rule that it is the duty of
the traveler to *stop*, look and listen, and, if he fails to
do this and collides with an approaching train, he is
precluded from recovering damages by reason of his
contributory negligence, although the servants of the
railway company in charge of the train may have failed
to give the customary or statutory signal on approaching
the crossing. *Henze v. Railroad*, 71 Mo. 636; *Zimmer-
man v. Railroad*, 71 Mo. 476; *Drain v. Railroad*, 86 Mo.
574; *Lenix v. Railroad*, 76 Mo. 86; *Stepp v. Railroad*, 85
Mo. 229. The duty of *stopping* is not an obligatory duty
under all circumstances (*Kelly v. Railroad*, 88 Mo.
534), and for obvious reasons we are of opinion that
it cannot be regarded, as a matter of law, as ordi-
narily the duty of a traveler on the streets of the city of

St. Louis when approaching a cable railway. But such a traveler is bound to make a fair exercise of his faculties before driving upon a point of danger, and, to this end, he is bound to listen for the customary signal, and to look for the approach of trains unless his view is obstructed. As we regard it as indisputable upon the evidence that the plaintiff's view was not obstructed so as to prevent him from seeing the train in time to have stopped before he drove upon the track, we regard it down to that point as clearly a case of concurrent negligence, even on his own testimony, as between him and the gripman driving the train. The gripman failed to give the customary signal, if the plaintiff's evidence is true, and the plaintiff failed to make the proper use of his faculties; and both he and the gripman proceeded forward, both of them actively to the point of contact. This makes a case of concurrent negligence, concurring in point of fault and concurring in point of time, in which case the law is well settled that the person suffering damage cannot recover.

A circumstance which will take the case out of this rule may exist, where the person sustaining the damage reaches the place of danger and is there discovered by the person in charge of the approaching train in such time that such person, by the exercise of ordinary and reasonable care, might have averted the injury; or where, if such person were exercising ordinary and reasonable care in keeping a lookout in front of him, he might have discovered the traveler at the point of danger in time to have avoided the injury. *Bergman v. Railroad*, 88 Mo. 678. The duty of the ordinary traveler approaching the crossing of an electric street railway thus to look and listen, and the corresponding obligation of the driver of the train to use reasonable care and exertion to avoid injuring him after discovering him in a position of danger on the

track, and the liability of the company in the case of the failure of the driver of the train to discover him in his position of peril by the exercise of that ordinary care which is incumbent upon him, were declared by this court in the recent case of *Hickman v. Railroad*, 47 Mo. App. 65.

Now the evidence, taken as a whole, fails to show that the gripman of the defendant's train did not exert himself as well as he could to prevent the collision, as soon as he perceived that the plaintiff was attempting to drive across the track immediately in front of the train. It must be remembered, according to the plaintiff's testimony, that the plaintiff whipped up his horse and attempted to drive rapidly in front of the gripcar at a time when the head of plaintiff's horse was only ten feet from the railway track. It was snowing at the time, though there is no evidence as to the condition of the tracks. There was evidence that a series of experiments had placed the distance at which trains can be stopped under various circumstances at from seventeen to forty feet, and, as the grade was a little downward at that point going east, the evidence of the defendant's superintendent was that a gripman would do well if he could stop his train at a distance of twenty-five feet with either snow on the track or a wet and slippery track; and there was no countervailing evidence. No one, we think, can read this record without getting in his mind a very clear image of a catastrophe, which many accustomed to ride on these gripcars have seen and which may have been familiar to most of the jurors. The gripman, approaching a crossing, sees a traveler driving across the cross street toward the point of intersection. He has the right to conclude that the traveler will not be so foolhardy as to run immediately in front of his train, and so in substance the court instructed the jury in this case.

When he reaches a point so near the traveler, that the distance between them is estimated at from twenty to thirty feet and the head of the traveler's horse is but ten feet from the track, the traveler whips up his horse and endeavors to cross the track in front of him. The gripman, at the same time, throws both his brakes and does all he can to avoid a collision. He nearly succeeds in stopping his train before it comes in contact with the traveler's vehicle. This does not make a case, where the ends of justice are subserved by allowing a jury to say that the railway company has been in fault and ought to pay damages.

The judgment of the circuit court will accordingly be reversed with the concurrence of all the judges.