60 207
66 56

JOSEPH S. WEAVER, Respondent, v. BENTON-BELLEFONTAINE RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 2, 1895.

1. **Negligence**: INSUFFICIENCY OF EVIDENCE. Evidence of negligence is insufficient, if it is at variance with the mathematical results of admitted facts.

2. **Evidence**: JUDICIAL COGNIZANCE: MATHEMATICAL PROPOSITIONS. Courts will take judicial notice of ordinary mathematical propositions.

*Appeal from the St. Louis City Circuit Court.*—Hon. Daniel Dillon, Judge.

Reversed.

*Sim T. Price* for appellant.

*A. R. Taylor* for respondent.

Rombauer, P. J.—The only point made by defendant on this appeal is that, upon the entire evidence adduced upon the trial, the court should have instructed the jury to find a verdict in its favor. At the close of the entire evidence the defendant requested such an instruction, and the court refused it, and the defendant excepted and still excepts. The jury thereupon found a verdict for the plaintiff. The rule in this state is that it is the duty of the court to give such an instruction at the close of the plaintiff's case, if all the evidence adduced by him is insufficient to support a recovery, or at the close of the entire case if all the evidence adduced in the cause fails to support a recovery. *Weber v. Railroad*, 100 Mo. 195, 204. It thus becomes incumbent on us to determine, *first*, whether the plaintiff by his evidence has shown any right of recovery, and, *next*, whether, if his evidence is insufficient for that purpose, the defendant's evidence aids the plaintiff's case to an extent entitling the plaintiff to recover on all the evidence.

The plaintiff's evidence is to this effect: He is a teamster, and familiar with the operation of electric cars. On October 26, 1892, he was engaged in driving a one mule coal wagon, of a gross weight of fifty-two hundred pounds, into a coal yard situated on the east side of Fourteenth street and south of Destrehan street. Mallinkrodt street is one block north of

Destrehan street. The defendant's car was coming southwardly on Fourteenth street, and had stopped on Mallinkrodt street, presumably to let off passengers. The car was in full view of the plaintiff. The plaintiff, who was on the east side of Fourteenth street, turned his team to drive across the track, swing back and then drive into the coal yard on the east side of the street. In doing this he had to cross the defendant's track, which was a single track, twice. When the plaintiff's team was on the track, the car was about one hundred and fifty feet from him. The plaintiff was driving quickly. When the plaintiff's hind wheel was in the center of the track, the car struck it and broke it.

On cross-examination the plaintiff stated that, when he first saw the car, he was about one hundred feet south of Destrehan street, and the car was at Mallinkrodt street (about four hundred and fifty feet). His mule was headed north, so that he had a full view of the car which was moving south. He then drove about ten feet north, then drove across the track to the west side, made a round circle and turned across the track again to drive into the coal yard. He again repeated the statement that the car was about one hundred and fifty feet or more from him when his mule's feet were on the track of the defendant's railroad upon his crossing it the second time, and that the car was running at an ordinary speed, which is shown by all the testimony to have been between seven and eight miles per hour. It was shown by the plaintiff's evidence that the length of the team from the mule's nose to the rear end of the wagon did not exceed nineteen feet.

The plaintiff's evidence tended to make the distance between himself and the car not less than 100

and fifty feet at the time when he crossed defendant's track the second time. Whether this evidence was given for the purpose of negativing the unavoidable inference of his own contributory negligence in attempting to cross a track immediately in front of a car which he knew to be moving towards him, or whether it was given as the result of an honest mistake in his estimate of distances, is immaterial. It is evident that the plaintiff's testimony on that subject is entitled to no credit, as, under the conceded facts, it is disproved by elementary, mathematical and physical propositions, which neither courts no juries are at liberty to disregard. *Gurley v. Railroad,* 104 Mo. 211, 233; *Hickman v. Railroad,* 47 Mo. App. 65, 73. Courts will take judical notice of ordinary mathematical propositions, since they are bound to take judicial notice of all scientific facts which universal experience has rendered axiomatic. *St. Louis Gaslight Company v. Insurance Company,* 33 Mo. App. 348. Conceding that the car was traveling at the greatest speed shown by the evidence, namely, eight miles an hour, and conceding further that its speed was not checked before it struck the plaintiff's wagon, yet it is a mathematical and physical impossibility that the car should have traveled a distance of one hundred and fifty feet, while the plaintiff's team going at an ordinary gait traveled less than nineteen feet, according to one part of plaintiff's evidence, and less than ten feet, according to another part. It is evidence, therefore, that the plaintiff by his evidence has shown no right of recovery, all the more so as his testimony is a perfect blank on the question as to what efforts the defendant's employee made in stopping the car after discovering him in a position of danger.

Turning from the plaintiff's evidence to that of the defendant, the following facts are shown. The colliding car was a motor car without a trailer. The

motorman had been in employ of the defendant since 1888. He discovered the plaintiff's wagon when it was on the east side of the track, and saw it crossing over to the west side and traveling on the west side about four or five feet from the rail. All at once the plaintiff whirled east at right angles across the track, without any warning to him, the motorman. When the plaintiff did this, his team was within a car length from the motorman. The latter at once applied the brake, but could not stop the car before it struck the plaintiff's wagon. It was shown that the length of the car in question was twenty-six feet. Several expert electricians were called by the defendant, who testified that a car of that construction can be stopped in eighteen to twenty feet after the brake is put on as an *emergency stop*, but that it would take an expert motorman who was on the lookout from one to two seconds, after he had discovered the necessity, to bring the brake to bear on the wheels, in which time the car would have traveled, if going at the rate of eight miles per hour, from twelve to twenty-four feet, making the entire space over which the car would pass between the moment of the discovery of the danger until it was brought to a standstill from thirty to forty-four feet. The motorman testified, and was corborated on that subject by a disinterested looker on, that he did everything in his power to stop the car as soon as he saw the plaintiff whirl toward the track, and that the car had almost come to a dead stop when it struck the wagon.

It will be thus seen that there was nothing in the defendant's evidence, which in any way could aid the plaintiff's case. If the defendant's evidence is to be believed, the plaintiff was guilty of negligence amounting to almost recklessness, while the defendant's motorman used the utmost diligence to avoid the collision. None of the plaintiff's witnesses testify to any acts of

negligence on the part of defendant's employee. All of the defendant's witnesses who testify on that point show not only care, but great care, on part of such employee, and show that the car was supplied with approved modern appliances for its stoppage. The plaintiff's version of the facts surrounding the accident is physically impossible. The defendant's version is not only highly probable, but is consistent. Taking either the plaintiff's evidence or that of the defendant, the judgment has no ground to rest upon. The facts shown are not essentially different from those appearing in *Smith v. Citizens' Railway Company*, 52 Mo. App. 42, and we will, as we did in that case, reverse the judgment without remanding the cause.

All the judges concuring, the judgment is reversed.