HARRY L. GREAR, Respondent, v. FORD F. HAR-
VEY et al., as receivers of THE METROPOLITAN
STREET RAILWAY COMPANY, Appellants.

Kansas City Court of Appeal, December 21, 1916.

1. NEGLIGENCE: Street Railways: Collision. The plaintiff sued
to recover damages for injuries received when one of defendant's
cars collided with his wagon. The plaintiff was driving south on
Cherry street in Kansas City when said street was icy and slip-
pery. When he came to the intersection of Cherry street with 18th
he saw a street car approaching, but unable to stop his horse and
wagon, and the motorman was unable to stop the car and the col-
lision resulted. Held, that the plaintiff was guilty of contributory
negligence, and the demurrer to the evidence should have been sus-
tained.

2. ————: ————: ————. A mere error of judgment committed
under stress of exiting and imminent danger in an honest and
spontaneous effort to avoid injury is not alone proof of negligence.

Appeal from Jackson Circuit Court.—Hon. Joseph A.
Guthrie, Judge.

REVERSED.

Reinhardt, Schisby & Muenich for respondents.

John H. Lucas and Lyons & Smith for appellant.

JOHNSON, J.—Plaintiff was injured at a street
crossing in Kansas City in a collision between a wagon in
which he was riding and an electric street car operated by
defendants on the Holmes street line and this suit is for
the recovery of his damages which he alleges were caused
by negligence of defendants.

The specifications of negligence in the petition are
(1) running the car at excessive speed, (2) failing to
give warning of the approach of the car to the crossing,
(3) failing to keep a lookout for vehicles approaching the
crossing, (4) running the car with defective brakes and

(5) "that the said agents saw, or by the exercise of ordinary care could have seen, that plaintiff was in a position of imminent and apparent danger at or near the defendants' track, in time, had reasonable and ordinary care, diligence and caution been exercised by the defendants, and their said agents in charge of said car in the equipment, control and management of said car to have stopped said car before the collision or so slacked the speed of said car as to have avoided said injury to plaintiff."

The answer is a general denial and plea that plaintiff was negligent in driving along a public street at night without displaying a light on his vehicle as prescribed by ordinance. The jury returned a verdict for plaintiff for $1500 and following the overruling of their motion for a new trial, defendants appealed.

The injury occurred at 6:30 a.m., January 11, 1913, at the intersection of Eighteenth and Cherry streets in Kansas City, in a collision between a one-horse, baker's wagon plaintiff was driving south on Cherry street, with a westbound trolley car on Eighteenth street. There was a single track in the middle of the latter street upon which only westbound cars were operated and the distance between this track and the north curb was fourteen feet, ten inches and between the track and the property line twenty-one feet. The width of Cherry street between property lines was fifty-six feet six inches, and between curbs, thirty-four feet. Cherry street was paved with vitrified brick and from Seventeenth street south to Eighteenth was on a down grade of three or four per cent, but was practically level on the street intersection. It was dark, the morning was cold, and the pavement was covered with a thin coating of ice. The horse's shoes had worn smooth and plaintiff drove at a slow trot down the street towards the crossing. There was a two-story building at the northeast corner of the streets and plaintiff could not see the street car coming from the east until he emerged from behind that obstruction. At that time he looked and saw the car which then was about twenty feet east of Cherry street and was running at a

speed, estimated by the motorman at ten miles per hour. Plaintiff was standing in the wagon and when he first saw the car he was about thirty-five feet north of the track, the horse, of course, being nearer. Realizing the danger of a collision he pulled on the lines to stop the horse but tried to avoid "pulling the horse off his feet" and thereby causing him to slip and slide towards the track, and he applied the brake but it did not hold. The horse began slipping and sliding towards the track and plaintiff endeavored to prevent a collision by swinging him around towards the right and succeeded in bringing him and the wagon to a place on the car track in front of the west property line on Cherry street, where the collision occurred, and plaintiff was thrown out of the wagon and injured.

The motorman who had another collision that evening and was discharged by defendants was introduced as a witness by plaintiff and testified that the car was of the single truck type and was equipped with a hand brake which was known by defendants to be in a defective condition when it left the barn; that the brake-shoes could not be brought into close contact with the wheels and he had run beyond stopping places because of that defect; that as soon as plaintiff drove from behind the building he saw him, realized the danger of a collision, and immediately shut off the power and applied the brakes; that if they had been in good working order he would have stopped the car in twenty feet and avoided a collision, and that he did not attempt to reverse the power until he was three or four feet from the horse and it was too late to prevent the collision. The salient points of his testimony relating to his own conduct are that he saw the horse and wagon at the first opportunity, realized at once the peril of plaintiff and acted energetically upon his best judgment to avoid injuring him. The only criticism of his conduct made by plaintiff is that he could have stopped the car in time if, knowing that the brakes were defective, he had immediately applied the power to reverse the motion of the car.

In the instructions given at the request of plaintiff the jury were told to return a verdict for him if they found from the evidence "that the motorman failed to exercise ordinary care in bringing his car to a stop, after he, in the exercise of ordinary care, should have realized that there was danger of a collision" or if they found that "defendants negligently permitted the car to be operated with a brake which was not reasonably effective to stop the car." All other pleaded acts of negligence were abandoned in the instructions—apparently for the well-grounded reason that there was no evidence to sustain them.

We are of the opinion that the court erred in not directing a verdict for defendants. Negligence of plaintiff which contributed to place him in a position of peril is indisputably established. Knowing that a car was likely to approach at any time, it was his duty to be on the lookout, to anticipate that he might meet a car there and to drive towards the crossing at a gait and in a manner that would enable him to stop before reaching the track. It develops upon the traveler approaching a railroad crossing either in the city or in the country not only to make reasonable use of his senses of sight and hearing to discover an approaching car or train, but to approach the place from which such discovery may be made in a reasonably careful manner. As was said by the Supreme Court of Virginia, in the following quotation from the opinion in Dey v. United Railways Co., 140 Mo. App. 1. c. 473:

"The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches the point where he can see or hear the train it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross, or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger. [3 Elliott on Railroads, sec. 1164, 65, 66, 2 Sherman & Redfield on Negli-

gence, secs. 476, 478.] [Washington, etc. Ry. Co. v. Lacey, 94 Va. 460, 475.]''

And it is pertinently observed by NORTONI, J., in the cited case: ''If it was impossible, as it was, for him to see or hear the approaching car before emerging from the building line, it was incumbent upon him then to approach the car tracks known to be dangerous, in such a manner as to be able to avoid a collision if a car were observed approaching. This obligation he voluntarily violated by driving into a known danger at such a rate of speed as to be unable to stop his team and avert the collision. The standard which the law sets up and by which the conduct of others shall be ascertained and measured, is that of an ordinarily prudent person under the existing conditions. [Loehring v. Westlake Const. Co., 118 Mo. App. 163, 178, 179.] It is obvious that a reasonably prudent person attending to the above-mentioned obligation which the law affixes upon him, would have approached this place of known danger under the circumstances in evidence by driving his team at such a rate as to be able to check the same and avert injury after seeing the approaching car. It is immaterial whether he was traveling in a jog trot, as he stated, or otherwise. The bold and predominating fact in the case, from his own testimony, is that his team was traveling at such a rate at the time he first observed the car, as rendered him wholly unable to check it and avert a possible collision.''

Plaintiff's own version of his conduct shows that he took no reasonably effective steps to protect himself from possible injury. What could it avail him to look for a car if, when he looked, and could see it he was driving at such speed that he could not prevent a collision, but had to rely for his safety solely upon the watchfulness and care of defendants? With knowledge that his horse was smooth shod and, therefore, upon an insecure footing on the icy pavement, it was his business to drive at a gait that would enable him to stop in a safe place upon discovering that the car was coming. His conduct was nothing less than an assumption of a superior right to

the crossing and such right is not accorded by law to any class of persons or vehicles. [Cole v. Railway, 121 Mo. App. 605; Markowitz v. Railway, 186 Mo. 350; Weaver v. Transit Co., 60 Mo. App. 207.] It is the duty of a driver of a wagon as well as of a motorman so to operate his vehicle in approaching public crossings as to be reasonably able to avoid collisions at such places and any exercise of less care than this is not reasonable care. Plaintiff argues that he had to drive in a jog trot to keep his horse "balanced" so he would not slip and fall. The contention that he had a right to do this even at the risk of a collision is as unsound as it would be to argue that he would have been justified in driving at a furious gallop for the same reason. He had no right to drive at any rate of speed that would prevent stopping in a place of safety after he emerged from behind the building and could see the car.

Plaintiff's own negligence which, obviously, contributed to place him in peril prevents his recovery upon negligence of defendants in running the car with a defective brake. Such negligence cannot be treated as an element of a cause of action under the last chance rule which merely takes into account conditions as they were at the time the peril of the plaintiff which ended in his injury became or should have become apparent to the operator of the dangerous instrumentality and ignores the cause or causes of such peril. [Grout v. Railway, 125 Mo. App. 552; Kinlen v. Railroad, 216 Mo. 166.]

Therefore, plaintiff's case on the demurrer of the evidence is reduced to this question: Is there any support in the facts and circumstances disclosed for a reasonable inference that the motorman was negligent in the effort he put forth to prevent the collision? It is conceded he was not remiss in maintaining a lookout, that he saw plaintiff and realized the danger as soon as plaintiff was visible and that immediately, he attempted to stop the car by the application of the hand brakes. But plaintiff argues that he erred and that the error should be accounted as negligence in not immediately reversing the power, instead of trying to stop with the

brakes which he knew were defective. He answered the question of counsel for plaintiff, "If you had reversed the moment you threw off the power, how soon would you have stopped?" with the statement, "in five or six feet if it had held." An expert witness for defendants testified on cross-examination that a car of that type going ten miles per hour could be stopped by reversing the power in twenty or twenty-five feet; at five miles per hour, could be stopped in fifteen feet, and that at slow speed there was not much difference in the distance in which the car could be stopped, whether the method employed was the use of the hand brake or the reversal of the power.

From the testimony of the motorman we have quoted, it appears he feared that at the speed the car was running the reversal would not hold, as he expressed it, and would not be efficacious until the speed had been reduced by the brakes. We think the characterization of his conduct is not to be determined by the answer to the question of whether or not he displayed sound judgment in adopting the course he did. As we hold in Matthews v. Railway, 156 Mo. App. 715, a mere error of judgment committed under the stress of exciting and imminent danger in an honest and spontaneous effort to avoid injuring another is not alone proof of negligence. A person in such situation may be actuated by reasonable, indeed, by the greatest care for the safety of his fellow beings, and yet pursue the least effective of two possible courses, and to stigmatize him as a wrongdoer because he was not infallible in an exciting emergency, would be an obvious perversion of the humanitarian doctrine, which requires a reasonable manifestation of humane impulses, not the possession and exercise of the utmost wisdom and coolness in the moment of danger. It is always for the court to decide whether a given state of facts will support a reasonable inference of negligence and, in the instant case, we think the indisputable facts that the motorman acted promptly, honestly and with his best judgment in the choice of one of two possible courses, absolves him in law from any reasonable im-

putation of a negligent breach of his humanitarian duty towards plaintiff. A man who is honestly and zealously doing his best to save another is not inhumane and should not be denounced as a wrongdoer.

The judgment is reversed. All concur.